533 A.2d 169

The FEDERAL LAND BANK OF BALTIMORE, Appellant,

v.

Robert SUSTRIK and Priscella Sustrik.

The FEDERAL LAND BANK OF BALTIMORE

v.

Robert M. SUSTRIK and Priscella J. Sustrik.

Appeal of Mike SUSTRIK, Jr. and Irene Sustrik,
His Wife, Exceptants.

Superior Court of Pennsylvania.

Argued June 4, 1987.

Filed Nov. 5, 1987.

Stephen D. Marriner, Jr., Washington, for appellant (at 1394) and appellee (at 26).

Oliver N. Hormell, California, for Sustrik appellants (at 26) and appellees (at 1394).

Before DEL SOLE, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This case involves cross-appeals from a dismissal by the Court of Common Pleas of Washington County of the exceptions to its order of September 4, 1986, which was reduced to judgment on October 4, 1986. We affirm and modify.

Our review begins with the September 7, 1984 filing of a civil complaint by The Federal Land Bank of Baltimore ("Bank") at No. 84 September Term, 1984 A.D. charging Robert M. Sustrik and Priscella J. Sustrik, his then wife, with failure to honor a 1982 note in the amount of $37,-500.00. The money was also secured by a purchase money mortgage on realty hereinafter known as the Ames Farm. Suit was brought under the note and not the mortgage.

Because divorce proceedings had been commenced by the time the complaint had been filed, separate responses were submitted on behalf of Robert and Priscella, the substance of which is not herein relevant.

A trial was held on November 5, 1984, the result of which culminated in counsel for all parties acknowledging that the Bank was entitled to judgment in the amount of $45,565.54. Further, at the commencement of the proceedings, counsel for Robert advised those present that, despite not being named in the pleadings, he was noting his appearance for Michael and Irene Sustrik, Robert's parents, and lodging an objection in that:

> The Bank's recovery should have been limited to the amount of money due it as of the time an offer to purchase the mortgage from the Bank was made by Michael and Irene "at least one year" previously.

Counsel also asked to be given 45 days to determine the manner in which he wished his exceptions to be decided, i.e., either by appeal or by a petition to open, or whatever other legal procedure he deemed appropriate. It was so granted by the court, and judgment was then entered against Robert and Priscella and in favor of the Bank.

On February 1, 1985, the Bank filed a Praecipe For Writ Of Execution with the prothonotary (No. 1 February Term, 1985 E.D.) directing the sheriff of Washington County to sell a tract of land ("West Pike Run Township Farm") that, although titled to Robert and Priscella, was subject to a 1973 mortgage recorded in the names of Michael and Irene as mortgagees.

In a separate affidavit, the Bank listed those individuals of record having an interest or lien in the property to be sold, e.g., counsel for Priscella in her divorce action ("Attorney Kusturiss") and Robert's parents, Michael and Irene. See Pa.R.Civ.P. 3129(a)(2).

The sale of the West Pike Run Township Farm on April 12, 1985 caused the filing of exceptions by Michael and Irene to the sheriff's proposed schedule of distribution. Rule 3136(d).

The sale netted $41,000.00 and, after deducting the sheriff's costs, listed Attorney Kusturiss as having "Lien # 1" in the amount of $4,447.17. Next in line was the Bank, listed as being owed $34,175.06. In their exceptions, it was the contention of Michael and Irene that the court direct that payment be made in the following sequence:

(a) A debt secured by a mortgage dated June 5, 1973, and recorded in the Recorder's Office on June 20, 1973, in Mortgage Book Vol. 784, Page 13 in an amount of $38,000.00, principal plus interest $9,278.39 being interest to date for a total of: $47,278.39

(b) A debt for which a Judgment was ordered on April 27, 1984, and filed in the Prothonotary's Office at No. 348, April Term, 1983, in an amount of $33,000.00, principal plus $3,191.52 being interest to date for a total of: $36,191.52

(c) A sum due Mike Sustrik, Jr. and Irene Sustrik, his wife, for taxes paid under the terms of the mortgage aforesaid: $1,065.65

(d) A sum due Mike Sustrik, Jr. and Irene Sustrik, his wife, for insurance paid under the terms of the mortgage aforesaid: $228.00

(e) Priscilla J. Sustrik and Michael E. Kusturiss, Esq., vs. Robert Sustrik, filed 19 May Term, 1984, entered May 10, 1984 and

(f) Federal Land Bank of Baltimore vs. Robert M. Sustrik and Priscilla J. Sustrik, filed September 7, 1984, for a Judgment entered November 5, 1984.

These same objections were communicated to the sheriff by letter dated April 10, 1985, and were read at the sale.

The record discloses a second Praecipe For Writ Of Execution being filed by the Bank (No. 3 May Term, 1985 E.D.). This resulted in the sheriff's sale of the Ames Farm on July 5, 1985, and the monies generated therefrom were apportioned first to costs, with the balance going to the Bank. Exceptions were again filed by Michael and Irene seeking the same distribution as they had sought earlier (at No. 1 February Term, 1985 E.D.).

Both the Bank and the Sustriks (Michael and Irene) filed petitions seeking the court to direct the sheriff to place the proceeds of the two sales "at interest" pursuant to Pa.R. Civ.P. 3136(g). These were duly granted, as well as an order appointing an auditor to hear evidence on the proper distribution of the proceeds. Id. at (f).

The auditor's report was filed on December 3, 1985, and recounted how Michael and Irene conveyed to their son (Robert) and then daughter-in-law (Priscella) the West Pike Run Township Farm in 1973. As security for payment on the property, Michael and Irene took back a purchase money mortgage in the amount of $38,000.00. This was recorded promptly.

In 1982, Robert and Priscella executed a purchase money mortgage in the amount of $37,500.00 in favor of the Bank with regard to the Ames Farm. This was also recorded.

Prior to the issuance of a decree divorcing Robert and Priscella in 1985, a judgment was entered, pursuant to a confession note (on May 10, 1984 at No. 19 May Term, 1984 D.S.B.), against Robert and in favor of his wife's attorney ("Kusturiss").

Additionally, the report recounted how Michael and Irene filed a complaint in assumpsit (on April 27, 1983 at No. 348 April Term, 1983 A.D.) against Robert and Priscella seeking the recovery of $33,000.00 allegedly loaned to them to purchase the Ames Farm. In the words of the auditor, albeit summary judgment was granted to Michael and Irene and filed on the same date, "no judgment appeared in the Prothonotary's judgment index at the time. It was not until March 1985 that Creditor Sustriks praeciped for judgment pursuant to the Order of April 27, 1984. Pursuant to the praecipe the Prothonotary indexed the judgment."

Further, the auditor recited the Bank's efforts to recoup the monies advanced to Robert and Priscella for the Ames Farm and the resultant default and sheriff's sale, with the attendant exceptions by Michael and Irene to the proposed sheriff's distribution.

Likewise, the sheriff's sale and proposed distribution of the proceeds generated from the Ames Farm sale were excepted to by the same litigants on the same grounds as the earlier disbursement.

As to the priority of the respective creditors to the funds from the sale of the West Pike Run Township Farm, the auditor concluded that the Bank had a judgment against the property as of the date the order of the court was entered, i.e., November 5, 1984.

Although Michael and Irene had an order "rendered" on April 27, 1984, as to the property in question, the auditor opined that, because the order "was not a judgment for a specific sum of money[, i]t required a praecipe for judgment" to become a lien and take precedence over the Bank's November, 1984 judgment which, in contrast, was for a precise money judgment. Presumably, this obviated the need on the part of the Bank to praecipe to have the order entered as a judgment and, thus, be converted to a lien. In so stating, the auditor looked to 42 Pa.C.S. § 4303(a), which, in pertinent part, establishes that a judgment or order of court for the payment of money shall be a lien "with the priority provided by a statute ... when it is entered of record and indexed in the office of the Clerk of the court of common pleas...." (See Auditor's Report at page 5)

Thus, the auditor wrote that, absent the indexing of Michael's and Irene's April, 1984 order of court "entering" judgment in its favor against Robert and, Priscella, the Bank's November, 1984 judgment/lien took prior in time to the Sustriks since the latter was "indexed" before the former.

Further, because there was nothing proffered to the auditor to indicate that the Bank had "actual knowledge" of the April 27, 1984 order in favor of Michael and Irene, he treated the Bank as a bona fide purchaser entitled to take prior in time to Michael and Irene with regard to the proceeds of the West Pike Run Township Farm sale.

However, as to Attorney Kusturiss' judgment against Robert, dealing with the West Pike Run Township Farm,

the auditor found that Kusturiss had actual knowledge of the April 27, 1984 order entered against Robert and Priscella since he was counsel for Priscella during the divorce proceedings occurring subsequent in time to the April, 1984 order.

Nonetheless, Kusturiss' judgment was given lien priority over the Bank's judgment of November 5, 1984, which, in turn, was given superior status over that of Michael's and Irene's April 27, 1984 judgment order.

In the distribution of the proceeds of the sale of the Ames Farm, the Bank was directed to take first, then Michael and Irene and, finally, Kusturiss because of his cognizance of the unfiled judgment of the Sustriks.

Exceptions to the auditor's report were filed by Michael and Irene and the Bank. These were dismissed and the auditor's report was affirmed by order dated September 4, 1986. On October 6, 1986, counsel for the Bank praeciped the prothonotary to enter final judgment as to the September 4th order, and an appeal was perfected by notice of even date to this Court. In contrast, the appeal of Michael and Irene was initially filed in Commonwealth Court and, ultimately, transferred to us for consolidation with regard to argument and for appeal purposes.

The main issue posited for our review relates to whether a judgment entered and filed, but not indexed by the prothonotary as a money judgment until after a subsequent judgment was secured and indexed prior in time, is to be accorded secondary status for distribution purposes of money generated from the sale of property against which competing judgments were issued.

It is the position of counsel for Michael and Irene (appellants at No. 1394 Pittsburgh 1986) that the April 27, 1984 order *entering* judgment in their favor (at No. 348 April Term, 1983 A.D.) was tantamount to a *lien* on the Ames Farm without the need for the order to be indexed by the prothonotary, and, thus, they have priority over the Bank's November 5, 1984 judgment as to proceeds resulting from

the sheriff's sale of the same property. In support thereof, they point to 42 Pa.C.S. § 8141(4), which provides:

Liens against real property shall have priority over each other on the following basis:

\* \* \* \* \* \*

(4) Adverse judgments and other orders, from the time they are *rendered.*

The Act of April 28, 1978, P.L. 202, No. 53, § 10(96) (Emphasis added). Thus, because judgment against Robert and Priscella (Ames Farm) was *entered* on April 27, 1984, Michael and Irene argue that nothing more needed to be done to insure their position against any subsequent lienor (Bank), notwithstanding their failure to have the judgment *indexed* before the Bank's judgment of November 5, 1984.

Section 8141(4) requires no more than a "rendition" of an order or judgment to determine the sequence in which they are to have priority, according to Michael and Irene at page 13 of their brief. In contrast, the Bank argues that the controlling statute is not Section 8141, but, rather, 42 Pa. C.S. § 4303(a), which provides in pertinent part that:

Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute or prescribed by general rule ... when it is *entered of record and indexed* in the office of the clerk of court of common pleas of the county where the real property is situated.... (Emphasis added)

The same remarks are echoed by the auditor in his report at page 5.

Our review of the statute in question discloses one (major) problem with the language quoted by the Bank at page 14 of its brief, in reconstructing Section 4303(a), i.e., the quoted verbiage above is *not an accurate reflection of the statute* as it was written during the time in question—1984. For example, an historical perspective of Section 4303(a) shows that, as it was originally drafted in 1976, the words "and indexed" were absent and did not appear until its amendment in 1980. However, the same terms ("and in-

dexed") were deleted with Section 4303(a)'s amendment on December 20, 1982, and presently reads in relevant part:

> Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute or prescribed by General Rule ... when it is entered of record in the office of the clerk of the court of common pleas of the county where the real property is situated....

The Act of December 20, 1982, P.L. 1409, No. 326, art. II, § 201, 42 Pa.C.S. § 4303(a) (Supp.1987). Thus, the Bank's and auditor's reliance upon the 1980 amended version of Section 4303(a), containing "and indexed" to buttress their argument that indexing is a *sine qua non* to establishment of a "lien" immune to assault from subsequent judgment creditors, is a misstatement of the law affecting the case at bar.

As stated most recently by our Supreme Court on this subject:

> Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. *The judgment* represents a binding judicial determination of the rights and duties between the parties, and *establishes* their *debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien* upon all real property of the debtor in that county. 42 Pa.C.S. Sections 4303(a)(b), 1722(b) and 2737(3).
>
> \*     \*     \*     \*     \*     \*
>
> The existence of a judgment lien prevents ... later lien-holders from satisfying their debt without first paying the earlier lien.

*In re Upset Sale, Tax Claim Bureau of Berks County*, 505 Pa. 327, 334–35, 479 A.2d 940, 943–44 (1984) (Emphasis added).

From the preceding, we garner that the case law and legislature (especially as to the promulgation of the 1982 version of Section 4303(a) minus "and indexing") are continually preoccupied with the requirement that "notice" be afforded to all potential creditors, as, for example, to a prospective debtor's financial standing, and the ultimate priority to be accorded to multiple creditors seeking to satisfy their judgments from a sometimes sparse fund.

This "notice" element is satisfied when a judgment or order is "entered of record" in the appropriate office of the Court of Common Pleas. 42 Pa.C.S. § 4303(a). As that phraseology ("entered of record") has been expounded upon recently by this Court in *Lansdowne v. G.C. Murphy Co.*, 358 Pa.Super. 448, 517 A.2d 1318 (1986), we quote from it at length; viz.:

> ... the great weight of authority is that the entry of judgment is a ministerial or clerical act, required to be done by the clerk of the court, ... and consists of placing a judgment previously rendered on the record, by which enduring evidence of the judicial act is afforded. While the term "entry of judgment" is sometimes used in a general sense so as to include rendition of judgment, it is most often used in a more limited and precise sense as meaning the ministerial act of spreading the judgment at large on the record as distinguished from the judicial act of giving or pronouncing judgment. There must be a compliance with statutes or rules of court regulating the entry of judgments.

> \*    \*    \*    \*    \*    \*

> A judgment is entered when it is spread at large on the record, and under some statutes not until then.

> \*    \*    \*    \*    \*    \*

Under some statutes, however, a judgment is entered when a signed copy of it is delivered to the clerk and filed by him, although not actually transcribed on the record, or when the judgment is duly signed and filed by the clerk. So it has been held that a judgment is in law entered, at least for some purposes, at the time a proper

entry thereof is formulated and given to the clerk to be entered of record.

    \*     \*     \*     \*     \*     \*

As a general rule, the decisions of all courts must be preserved in writing in some record provided for that purpose. Where a statute so requires, judgments should be entered, and for many purposes a judgment is not complete, perfect, and effective until it has been duly entered. Thus it has been broadly held that judgments take effect only from the date of entry, and that there is no judgment until it is entered of record.

358 Pa.Super. at 453–55, 517 A.2d at 1321–22, quoting 49 C.J.S. Judgments, §§ 106, 107.

When subsection (a) of Section 4303 is read in light of *Lansdowne*, it becomes obvious that the mere "entry" of an order of the court in favor of Michael and Irene is not, in and of itself, sufficient to constitute the "of record" requirement contemplated by either the statute or case law to meet the "notice" aspects necessary under the law to afford priority status to one creditor's judgment over another's.

Rather, once the order of court entering judgment has been secured, the winning party has the obligation to see to it that the judgment order is "filed" with the prothonotary,[1] and not in the clerical sense of making sure that the case file is placed back on the shelf. It would appear that this is the context in which Michael and Irene spoke when they wrote in their exceptions to the sheriff's sale that: "Judgment was ordered on April 27, 1984, and filed in the Prothonotary's Office at No. 348, April Term, 1983[.]" (Record No. 28, at page 2)

We make such a determination premised upon the fact that the auditor, after conducting a hearing on the matter, wrote in his report at page 3 that: "It was not until March 1985 that Creditor Sustriks praeciped for judgment pursuant to the order of April 27, 1984. Pursuant to the praecipe

1. See *Commonwealth v. Roberts*, 392 Pa. 572, 586–87, 141 A.2d 393, 400 (1958); *Jaczyszyn v. Paslawski*, 147 Pa.Super. 97, 101, 24 A.2d 116, 118 (1942).

the Prothonotary indexed the said judgment." Counsel for Michael and Irene took no exceptions to this aspect of the auditor's report.

It would appear, however, to be a procedural anomaly for Michael and Irene to praecipe to have the judgment order "indexed" if it had already been written into the judgment docket by the Washington County prothonotary. Such a syllogism is refuted by the record and practical application of normal filing procedures.

For instance, we believe that one would praecipe to have the judgment order "entered of record" by the prothonotary in the judgment docket, and the indexing of the same in a separate volume would occur as a matter of course as an extension of the ministerial duties of the prothonotary ("recording officer"), and not as a consequence of a praecipe, as the auditor's report recounts (erroneously) as having occurred. Cf. 21 P.S. § 720-5 (Supp.1987) ("The recording officer shall enter of record and index all satisfaction pieces against the name of the mortgagee or last assignee...."). This is buttressed by the fact that the April 27, 1984 order made no reference directing the prothonotary to enter judgment, which, in all likelihood, would have obviated the need to have a praecipe filed by the Sustriks to achieve the same result. (See Auditor's Report at page 3)

Absent the "entry of record" in the judgment docket of this April 27, 1984 order by Michael and Irene (see note 1, supra), and there is no indication to the contrary from what we can glean from the record and briefs before us, the Bank was not on notice of the existence of the judgment order. Nor do we believe that a diligent search of the judgment docket would have disclosed otherwise since, by Michael's and Irene's own admission, a praecipe for entry of the order of April 27, 1984 was filed in March of 1985 to have it reduced to judgment and docketed, and not indexed since docketing precedes indexing.

Therefore, if the Bank had searched the judgment docket it could not have discovered the existence of any judgment entered against Robert and Priscella as of November 5,

1984, given the fact that the April 27, 1984 order was not praeciped by the Sustriks until March of 1985. See *Coral Gables, Inc. v. Kerl,* 334 Pa. 441, 443–44, 6 A.2d 275, 277 (1939); *Russeck v. Shapiro,* 170 Pa.Super. 89, 84 A.2d 514 (1951); *South Side Bank & Trust Co. v. Wright,* 153 Pa.Super. 93, 32 A.2d 918 (1943).

Accordingly, we embrace the lower court's adoption of the auditor's report holding the Bank to be a bona fide purchaser. See *Jaczyszyn v. Paslawski,* 147 Pa.Super. 97, 24 A.2d 116 (1942). The only indication to the contrary is the self-serving remarks of Michael and Irene that discussions were had between counsel for the parties in the court's chambers, during which, supposedly, the existence of the April 27, 1984 judgment was broached in the presence of counsel for the Bank. However, a brief, and the statements contained therein, is not part of the record which an appellate court can take cognizance of without contravening established law to the contrary. See *McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028 (1987). Since the allegations attributing the Bank with having "actual knowledge" of the existence of the April 27, 1984 judgment order are proffered in the brief of Michael and Irene, we will not consider the effect of such unsubstantiated assertions upon our decision this day. Id.

Consistent with our conclusion on the priority question, we look to the "subordination rule" adopted by our Supreme Court in resolving a circular lien situation when there has been a failure by one of, for example, three creditors to make a required filing. See *In re 250 Bell Road, etc.,* 479 Pa. 222, 388 A.2d 297 (1978), where the application of the "subordination rule" was illustrated by the use of successive mortgages; to-wit:

A takes a first mortgage which he fails to file. B takes a second mortgage, with notice of the mortgage to A, and files. C takes a third mortgage, without notice of the mortgage to A. A has priority over B (because of B's knowledge); B has priority over C because of prior filing; C has priority over A (because of A's failure to file and

C's lack of knowledge). In this situation, the circularity arises because of A's failure to file.

479 Pa. at 229, 388 A.2d at 301. Further, the Supreme Court, prior to remanding to the lower court for implementation of the then new "subordination rule" in this Commonwealth, illustrated its application thusly:

> Where the subordination rule is applied, the amount of A's claim is set aside from the fund to pay C and the balance, if any, is paid to A; thereafter, the balance of the fund, if any, is paid to B; the remaining balance, if any, is paid to C and A in that order.

> Thus, C, by virtue of the subordination agreement, is paid first, but only to the amount of A's claim, to which B was in any event junior. B receives what he had expected to receive: the fund less A's prior claim. If A's claim is smaller than C's, C will collect the balance of his claim only after B has been paid in full. A, the subordinator, receives nothing until B and C have been paid except to the extent that his claim exceeds the amount of C's claim.

> In applying the subordination rule to a failure-to-file circuity, subordination of A, the nonfiler who is at fault, is the obvious choice and C is the obvious choice to receive the benefit of the subordination because he took without knowledge.

479 Pa. at 233, 388 A.2d at 303. Instantly, the auditor applied the "subordination rule" to the proceeds of the sale of the West Pike Run Township Farm in the following manner:

> A (Creditor Sustriks) has a judgment which is first in time, but which is filed as a record lien last in time. B (Kusturiss) has a judgment which is second in time, and which is filed first; but B has actual knowledge of A's judgment. C (Bank) has a judgment which is third in time and which is filed second. The claim of A is set aside as a first portion from the fund to pay C, because it is subordinate to C's claim. Any balance in that portion belongs to A. The remaining balance, if any, of the fund is now paid first to B, second to C and third to A.

In the present case the net fund, after Sheriff's costs, is $38,622.23, as of the date of sale. The claim of A (Creditor Sustriks) is $33,000.00 plus interest thereon at 6% per annum from March 15, 1985 (when judgment was first praeciped) to the sale date of April 12, 1985. The interest is $151.89, thus creating the first portion to be set aside in the amount of $33,151.89. That amount is less than the claim of C (Bank) and therefore Bank is entitled to that whole portion. The remaining balance in the fund, being $5,470.34 is payable first to Kusturiss in the amount of $4,447.17 (as per the Sheriff's proposed distribution sheet) and $1,023.17 to Bank.

It is recognized that the Sheriff is receiving interest in the fund, which has been deposited in a bank. That interest probably will be consumed in payment of the fees of the undersigned Auditor. If there is, however, any remaining interest it should be divided proportionally between those sharing in the balance of the fund, that is, 81.3% to Kusturiss and 18.7% to Bank.

(Auditor's Report at pages 7–8)

In contrast, because there was no circuity problem among the creditors as to the proceeds from the sale of the Ames Farm, the second distribution went as follows:

... the net proceeds are payable first to Bank, second to Creditor Sustriks on their claim, and last to Kusturiss. There is no circuity problem. Bank's lien is clearly first in time because it dates as of the 1982 mortgage recording. Kusturiss (who may be paid in full out of the proceeds of 1 February 1985 E.D.) stands back of Creditor Sustriks because he had actual knowledge of their unfiled judgment.

The net fund, after Sheriff's costs, as of the date of the second sale on July 5, 1985, is $27,952.62. Bank is entitled to the balance due on its judgment as of that date of sale, being $48,572.04 minus what it receives under 1 February 1985 E.D., which is, hypothetically, $34,175.06. The difference, $14,396.98 should be distributed to Bank,

and the remainder of the fund, being $13,555.64, should be distributed to Creditor Sustriks.

As in 1 February 1985 E.D., there is the problem of interest accruing to the Sheriff, to the extent it is not consumed by the Auditor's fee. It should be divided proportionally, 51.5% to Bank and 48.5% to Creditor Sustriks.

(Auditor's Report at page 9)

We find no fault with the auditor's distribution of the revenue produced from the sales of the two farms.

■ However, we find fault with that portion of the order of the lower court directing that the auditor's fee be paid out of the interest accumulated, first, out of the proceeds placed in an interest bearing account from the sale of the West Pike Run Township Farm, and, second, if the fee had not been satisfied, the interest generated from the deposit of the funds from the Ames Farm sale into an account accuring interest was to be looked to for satisfaction.[2]

We believe the more equitable result to be, as stated by the Bank in its exceptions appealed to this Court, that the auditor's fee be paid out of the funds before they are divided. As stated in the Bank's brief at page 17:

2. The court's order of January 8, 1986, is at odds with the auditor's allocation of the percentage of interest to be shared, if any remains, after payment of the auditor's fee from this source.

To elucidate, the court has the Bank listed as first in line to receive 81.3% of the overflow, with the balance of 18.7% to be allotted to Kusturiss. The auditor, in his report, has the parties reversed, i.e., Kusturiss is to receive 81.3% and the Bank is to receive 18.7%.

We find that the auditor's application of the "subordination rule" is accurate and must have been misapplied in transcription in the lower court's order of January 8, 1986. (See and compare Records at Nos. 14 and 36)

Nonetheless, because we conclude, as discussed *infra*, that the auditor's fee is to be paid out of the proceeds of the sale of the farms, and not out of the interest generated therefrom, we find the error to be harmless. The reason is, once payment of the auditor's fee is satisfied out of the proceeds of the sales, the interest can be added to the respective funds from which it was generated and distributed under the auditor's scheme, minus utilization of the interest allocation referred to therein.

All of the allowed expenses of the Sheriff's sale are deducted prior to distributing amounts to the various lien creditors except for the Auditor's fee. There is no reason given why this fee should be treated any differently than any other expense.

The practical effect of taking the Auditor's fee from the interest accumulated on the various funds during the period that the exceptions to the Sheriff's sale were being litigated is to force The Federal Land Bank of Baltimore to pay the majority of the fee whereas if the Auditor's fee is paid before the division of the proceeds from each Sheriff's sale, then because the Federal Land Bank is paid in full and the Kusturiss Judgment is paid in full, the Mike and Irene Sustrik Judgment against their children since it is the one that is not paid in full, would be reduced by the amount of the Auditor's fee. No argument has been raised at this point as to why the normal procedure of paying all costs out of the fund before it is divided should not be followed in this matter, particularly, where the Auditor and the Lower Court found in favor of The Federal Land Bank of Baltimore and against the position of the Sustriks.

"Ordinarily, the costs of audit on distribution of a fund are payable from the fund. Where a fund has been ordered into court by claimants acting in good faith and proper inquiry and without intending to obstruct the progress of the cause, the court will not be strict in imposing costs on them when unsuccessful but may charge the fund with the costs of the audit. Where, however, costs are unnecessarily caused, they should usually be paid by the party causing them." P.L.E. Costs, Section 35.

There is no indication from our review of the record that the Bank attempted to stymie the resolution of this matter. In fact, as discussed *infra,* the Bank's exception to the lower court's January 8, 1986 order directing payment of the auditor's fee out of the interest accumulated with the

deposit of the sale proceeds in a financial institution is found to be meritorious by this Court.

Each of the parties linked to the distribution scheme of the proceeds at issue is the beneficiary of the auditor's report, be it in a positive or negative sense. Therefore, we see no reason why all concerned should not bear the expense of, and absorb equally, the fee for the auditor appointed at the insistence of the parties. And, we perceive the most equitable way in allocating cost is by having one-half of the auditor's fee paid out of the proceeds of the sale of the West Pike Run Township Farm, and the remaining half deducted from the sale of the Ames Farm, of course, after sheriff's costs are paid. In this way, each of the parties shares in the cost of the auditor's fee equally, which is more consistent with equitable notions of apportionment of costs under the facts here.

Thus, that portion of the lower court's order dividing the payment of the auditor's fee between the interest accruing on the funds from the farm sales, while in a financial institution, is stricken, with payment of the fee in question to be made in accordance with the discussion had herein. In all other respects, the order of the court below dated September 4, 1986, and reduced to judgment on October 4, 1986, is affirmed.[3] Jurisdiction is not retained.[4]

3. It may be stating the obvious, but the mortgage of Michael and Irene on the West Pike Run Township Farm, albeit perfected ("recorded"), was not taken to judgment and entered of record until after the Bank's favorable order as to its complaint was reduced to judgment. Compare *Security Bank & Trust Co. v. Pocono Web Press, Inc.,* 295 Pa.Super. 455, 441 A.2d 1321 (1982). Thus, the holding of the mortgage by Michael and Irene, which is unquestionably a lien, is not relevant to the disposition of the priority question regarding the competing liens turned to judgment.

In other words, Michael's and Irene's failure to have judgment entered when the mortgage on the West Pike Run Township Farm fell into default gave the Bank the opportunity to have its complaint against Robert and Priscella run the gamut and resulted in the entry of judgment in their favor, which, unlike Sustriks', was "spread on the record." See *Lansdowne v. G.C. Murphy Co.,* 358 Pa.Super. 448, 517 A.2d 1318 (1986).

It is unquestioned in the law that the lien of a first mortgage, which all agree the Sustriks had on the West Pike Run Township Farm, is

4. See note 4 on page 600.

not subject to divestment/discharge, and so to the mortgagee's right to execute on that property remains viable. See *Unity Savings Association v. American Urban Sciences Foundation, Inc.,* 337 Pa.Super. 470, 487 A.2d 356 (1984); *Public Federal Savings & Loan Association v. Neumann,* 334 Pa.Super. 389, 483 A.2d 505 (1984); see also *In re Upset Sale, Tax Claim Bureau of Berks County,* 505 Pa. 327, 479 A.2d 940 (1984) (Discussing distinction between judgment lien (general lien) and mortgage lien (specific lien)).

However, the Sustriks were the purchasers at the sheriff's sales, and, obviously, would not execute on property they now own. This puts in perspective the objective of the Sustriks on this appeal, which, unfortunately, is not to be.

4. We in no way wish to imply by our holding today that "indexing" of a judgment is a condition precedent to the taking of an appeal or that the time strictures associated with the perfection of an appeal do not commence running until such an act ("indexing") has been completed.

The finality of an order or judgment for appeal purposes remains, as has been well documented in the case law of this Commonwealth. See *U. S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 487 A.2d 809 (1985); *Simpson v. Allstate Insurance Co.,* 350 Pa.Super. 239, 504 A.2d 335 (1986); *Miller Oral Surgery, Inc. v. Dinello,* 342 Pa.Super. 577, 493 A.2d 741 (1985); *Livolsi v. Crosby,* 344 Pa.Super. 34, 495 A.2d 1384 (1985).