**In re NELSON CO., Debtor.**

**NELSON CO., Plaintiff,**

v.

**AMQUIP CORPORATION, Defendant.**

**Bankruptcy No. 89–12080F.**

**Adv. No. 90–0152F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 22, 1990.

---

Myron A. Bloom, Adelman Lavine Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, Nelson Co.

Martin J. King, Jonathan E. Rich, Cordes, King & Rich, New Hope, Pa., for defendant, Amquip Corp.

Maxwell P. Gorson, Gorson & Gorson, P.C., Philadelphia, Pa., for Creditors' Committee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

By an adversary proceeding filed in this court, the debtor seeks a declaration that the defendant, Amquip Corporation, holds an unsecured claim and not a secured claim. The debtor contends that any lien on estate property currently held by the defendant should be avoided as preferential. Amquip disagrees; it asserts that it holds a valid nonpreferential lien. The facts are not in dispute; indeed, they have been stipulated by the parties. To resolve this complaint, it is necessary to determine certain narrow bankruptcy law issues and interpret the meaning of an ambiguously worded agreement.

**1.** Although not relevant to this dispute, the complaint in confession alleged that Amquip leased certain equipment and machinery to the debtor but was not paid according to the leases.

**2.** As will be discussed below, the date that Amquip obtained a judgment lien is critical to my resolution of this dispute. As I read the submissions of the parties, both accept that the confessed judgment was entered on March 6, 1989. (It also appears from the docket entries attached to the stipulation that judgment was entered on the date that the request for a confessed judgment was made.)

Under former Pennsylvania law, the entry of judgment would not by itself create a judicial lien; the judgment must also be indexed. Former 42 Pa.C.S.A. § 4303(a) (repealed 1982). *Accord Estate of Berretta*, 493 Pa. 441, 426 A.2d

## I.

The parties have submitted a lengthy fact stipulation which I shall summarize.

On March 6, 1989, Amquip confessed judgment against the debtor in the state court system for Pennsylvania, Court of Common Pleas, Delaware County, No. 89–3164. Pennsylvania permits confessions of judgment in certain instances and Amquip alleged that those instances were met.[1] Pa.R.Civ.Pro. 2951. *See generally In re Ashe*, 669 F.2d 105 (3d Cir.), *vac., Commonwealth Nat. Bank v. Ashe*, 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982), *on remand*, 712 F.2d 864 (3d Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984). Judgment was entered on the date that the confession was filed in the amount of $349,734.32.[2] As established by Pennsylvania law, 42 Pa.C.S.A. § 4303, the entry of the judgment created a lien on all real property owned by the debtor which was located in the county in which judgment is entered. *See In re Upset Sale, Tax Claim Bureau*, 505 Pa. 327, 479 A.2d 940 (1984); *Federal Land Bank v. Sustrik*. The parties agree that Nelson owned real estate in Delaware County, Pennsylvania on March 6, 1989. (Neither the real estate nor its value is mentioned in the stipulation.) Therefore, it is agreed that Amquip's confessed judgment created a lien against the debtor's realty.

On March 10, 1989, the debtor filed a petition in the state court to "open and/or strike the confessed judgment."[3] On May

1098, 1099 n. 1 (1981). *See also Jarrell v. Fidelity–Philadelphia Trust Co.*, 33 D. & C.2d 143 (C.P.Del.Co.1963). When section 4303(a) was amended in 1982 the requirement of indexing was deleted; therefore the lien arises solely upon entry of the judgment. *Federal Land Bank v. Sustrik*, 367 Pa.Super. 582, 533 A.2d 169 (1987). There is still a distinction between an order in favor of a party and the entry of judgment. *Id.* In this dispute, though, as mentioned above, I accept that judgment was entered on March 6, 1989.

**3.** The two remedies yield different results. A decision by the court to open the judgment permits the state court defendant to offer a defense but does not extinguish the judicial lien. *See, e.g., Giles v. Ryan*, 317 Pa. 65, 176 A. 1 (1935); *Sanctis v. Lagerbusch*, 213 Pa.Super.

22, 1989, both parties through counsel appeared in state court and reported as follows:

> Your Honor, we have reached a tentative settlement, and jointly request that the Court hold this matter in abeyance for one week so we can work out the details. Basically, the settlement agreement, that we have arrived at in principle, is that we would stipulate to strike the present judgment, that we would then enter a judgment by consent, which would be for the uncontested amount between the parties. It would not include an attorney's fee. It would include an interest, which we still have to work out the details of, and the parties would then enter into a side agreement by which plaintiff would agree to stay execution, pending the outcome of the litigation that we expect to bring very shortly against the contractor and owner.

Based upon that statement, the state court issued no ruling.[4]

After that statement was made, on June 1, 1989 counsel for Nelson Company sent, via facsimile machine, to counsel for Amquip a proposed consent order and cover letter. The consent order transmitted was already signed by debtor's counsel. Before Amquip acted, the debtor filed a voluntary petition in bankruptcy on June 5, 1989. After the filing (and presumably after Amquip learned of this fact), Amquip refused to sign the consent order. Instead, on or about July 26, 1989, Amquip filed a secured proof of claim in this bankruptcy case in the amount of its confessed judgment. It asserted in that proof of claim that it held a lien on Nelson's realty arising from the confessed judgment.

On August 9, 1989, after Amquip submitted this secured claim, the debtor filed an application to remove the state court litigation to this court. 28 U.S.C. § 1452(a).[5] Shortly thereafter, on August 30, 1989 counsel for Amquip informed debtor's counsel that Amquip was willing to sign the consent order originally proposed by Nelson. Sometime later, counsel for these parties, along with counsel for the official committee of unsecured creditors, submitted to this court an agreement signed by all three counsel.[6] In effect, the parties agreed that the bankruptcy stay in 11 U.S.C. § 362(a) would be lifted in order to permit them to file in state court the proposed consent order.[7] I approved this agreement on November 28, 1989.

At long last, the consent order was presented to state court and approved on December 15, 1989. The precise text of the order is as follows:

### CONSENT ORDER

AND NOW this 1st day of June, 1989 it is hereby stipulated and agreed by

---

483, 249 A.2d 919 (1968). An order to strike the judgment does extinguish the lien. *See Macioce v. Glinatsis,* 361 Pa.Super. 222, 522 A.2d 94 (1987).

**4.** I do not understand the debtor to suggest that this statement of counsel actually settled the dispute, subject only to being memorialized. It appeared on May 22 that there were significant issues yet to be resolved. However, even if a settlement had been reached on May 22, 1989, it would not alter my analysis of this dispute.

**5.** The state court civil action was removed to the District Court for the Eastern District of Pennsylvania and given a filing number of C.A. # 89–5824. By order entered April 5, 1990, the civil action was referred to Bankruptcy Court. In this court the adversary proceeding was docketed at Adv. No. 90–0212.

**6.** The agreement bears the caption Adv. No. 89–0738 with Amquip as plaintiff and the debtor as defendant. Apparently, the debtor could not decide whether under Bankr.R. 9027 the removal application should be filed in bankruptcy court or district court. Therefore, it filed removal applications in both courts.

As a result, after the District Court referred its proceeding under 28 U.S.C. § 157(a) to this court, there were two identical proceedings with different adversary filing numbers. When the stipulation to permit the state court to enter the consent order was filed, the clerk of bankruptcy court marked proceeding No. 89–0738 settled and ended.

**7.** Although the debtor was the moving party in that state court proceeding at the time it filed its bankruptcy petition (by virtue of its pending petition to open or strike the confessed judgment), the automatic stay prevented any resolution of that pleading, at least by the state court. *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446 (3d Cir.1982).

counsel on behalf of the parties as follows:

1. The confessed judgment entered on or about February 28, 1989 is hereby stricken.

2. Judgment is entered in favor of Amquip and against Nelson in the principal amount of $291,712.46 plus interest at 18% from 30 days after the date of each invoice to March 1, 1989, and at the legal rate of post-judgment interest thereafter.

On approximately February 1, 1990, Amquip filed its first amended proof of claim. This amended proof stated that this creditor was owed $291,712.46 plus interest, which is consistent with the consent order.[8] The debtor then filed this adversary proceeding seeking to avoid a preferential transfer. Thereafter, Amquip filed an answer in opposition and also filed a second amended proof of claim. This last proof declares that Amquip is owed $309,673.04 (which is computed as the principal amount plus interest up to March 1, 1989), along with postjudgment interest from March 1, 1989.[9]

Finally, the parties stipulate that since March 6, 1989 and at all times thereafter, Nelson was insolvent.

## II.

The debtor, supported by the official committee of unsecured creditors, asserts no objection to the sum that Amquip claims is due in its second amended proof of claim. Its challenge is limited to Amquip's asserted secured status. The debtor contends that Amquip should be classified as an unsecured creditor because any judicial lien it now possesses arose during the preference period established by 11 U.S.C. § 547. The debtor has the burden, therefore, of demonstrating that all of the elements of section 547(b) are applicable. 11 U.S.C. § 547(g). *See Decatur Contracting v. Belin, Belin & Naddeo*, 898 F.2d 339, 345 n. 5 (3d Cir.1990); *Drabkin v. District of Columbia*, 824 F.2d 1102, 1105 n. 9 (D.C.Cir. 1987), *In re Metro Communications, Inc.*, 115 B.R. 849 (Bankr.W.D.Pa.1990).[10]

■ Section 547(b) refers to the avoidance of a "transfer." Implicit in this dispute is the recognition by both parties that the prepetition creation of a judicial lien within the statutory preference period represents a transfer, 11 U.S.C. § 101(50), which may be avoided as preferential if all the elements of § 547(b) are present. *See, e.g., In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 680–81 (Bankr.E.D.Pa.1990); *In re Syed Industries Corp.*, 58 B.R. 920 (Bankr.E.D.N.Y.1986); *In re Crump*, 42 B.R. 636 (Bankr.E.D.Mo.1984). One of those conditions, which the plaintiff here must demonstrate, pursuant to 11 U.S.C. § 547(g), is that the challenged transfer was:

made—on or within 90 days before the date of the filing of the petition....

11 U.S.C. § 547(b)(4)(A).

Both parties argue alternative theories based upon when the judicial lien was created. The debtor contends that the judicial lien now possessed by Amquip arose on June 1, 1989; alternatively, it contends that it arose on March 6, 1989. Amquip argues that its lien arose on March 6, 1989 and,

**8.** Typical of this dispute, the amended proof makes two remarkable statements. In paragraph 8, Amquip states that "no security interest is held for this claim." In paragraph 9, the proof states that "This claim is a preference."

**9.** In addition to performing the computation for interest due prior to March 1, 1989, the second amended proof of claim contains these two conflicting statements:
"10. No security interest is held for this claim.
11. This claim is a nonavoidable preference and secured claim."
Therefore, the second amended proof withdrew the opinion that Amquip held a preferential

claim. It remains ambiguous concerning this creditor's secured status. For this dispute to have any meaning, the parties must be in agreement that Amquip is asserting a secured claim by virtue of a judgment lien. I will make the same assumption.

**10.** Under § 547(b), the trustee is granted the power to avoid preferential transfers. 11 U.S.C. § 1107(a) gives a debtor in possession substantially the same power the trustee has, including the power to avoid a preferential transfer. *See In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 679 n. 1 (Bankr.E.D.Pa.1990).

alternatively, on December 15, 1989. Amquip asserts that if the lien arose on December 15th, it is a postpetition lien protected by 11 U.S.C. § 549(a)(2)(B). The debtor counters that there was no court authorization under § 549. It further argues that none could be given without notice under Bankr.R. 9019; it also asserts that the state court had no jurisdiction to enter the consent order as the state court litigation had been removed to this court. As a result, the debtor contends that no lien could be created by the entry of the consent judgment on December 15, 1989.

### III.

■ That Amquip's lien was created on March 6, 1989 upon entry of the confessed judgment is asserted by both sides because March 6 is 91 days from the date Nelson filed its bankruptcy petition. That filing date, June 5, 1989, was on a Monday. Thus, if March 6, 1989 is the operative date for the transfer then the issue upon which courts divide is relevant: is the 90 day preference period established by section 547 to be computed by counting forward from the date of transfer?; or, is it computed by counting backwards from the date the bankruptcy case commenced? If counting forward is appropriate, then the 90th day fell on a Sunday and Bankr.R. 9006(a) would extend the limitations period to the following Monday. *See generally Frey v. Woodard*, 748 F.2d 173 (3d Cir. 1984); *In re Day*, 102 B.R. 414 (E.D.Pa. 1989). If one is to count backwards, then a transfer on March 6, 1989 (which is also a Monday) would fall just outside the preference period.

As the parties correctly acknowledge in regard to this 90 day provision, "[t]here is much confusion ... as to whether the court should count forward from the date the

transfer was made, or count backward from the date the petition was filed." 4 *Collier on Bankruptcy* ¶ 547.16[3] (15th ed. 1990) (footnotes omitted). Nelson and Amquip agree upon the application of Bankr.R. 9006 to whatever counting method is utilized, *see Harbor Nat. Bank v. Sid Kumins, Inc.*, 696 F.2d 9 (1st Cir.1982) (analyzing Rule 9006 in the context of preference litigation), and they further agree that the judgment lien is within the preference period if forward counting is used, and is outside the preference period if backwards counting is appropriate. Naturally, each argues for the counting method most favorable to its position.

In my view, a determination of whether the judgment lien of March 6, 1989 arose within the 90 day preference period is crucial to the overall resolution of this dispute. As Nelson's bankruptcy petition was filed on a Monday, and there being 91 days between transfer and filing, I cannot avoid passing upon the proper interpretation of section 547(b)(4)(A). *Compare In re Kramer*, 64 B.R. 531, 533 (9th Cir.B.A.P. 1986) ("Neither the date of garnishment ... nor the date the bankruptcy case was filed ... fell on a Saturday, Sunday, or holiday and therefore we need not become embroiled in the controversy over whether to count backwards from the bankruptcy filing or forwards from the transfer") (footnote omitted).[11]

Those decisions which determine that it is appropriate to count forward from the date of the transfer view the transfer as the focal event. *E.g., In re Ford*, 34 B.R. 93 (Bankr.W.D.Va.1983), *aff'd*, 53 B.R. 444 (W.D.Va.1984); *In re Fabmet*, 31 B.R. 414, 415–16 (Bankr.W.D.N.Y.1983); *In re Mailbag Internat'l, Inc.*, 28 B.R. 905, 910 (Bankr.D.Conn.1983).[12] Those decisions counting backwards focus upon the bank-

---

**11.** It is worth remarking that neither method of counting generally favors debtors or creditors once it is agreed that Bankr.R. 9006(a) is applicable. In this instance forward counting would bring the transfer within the 90 day preference period. In other instances, backward counting would do so. *E.g., In re Fabmet Corp.*, 31 B.R. 414 (Bankr.W.D.N.Y.1983). Therefore, the interpretation of section 547(b)(4)(A) does not involve any policy analysis concerning congres-

sional intent to either favor or restrict preference litigation.

**12.** The court in *Mailbag* found the notion of counting time backward counterintuitive. I discount any intuitive notion of time in resolving this issue of statutory construction. It is just as easy to count backwards as forwards.

ruptcy filing. *E.g., In re J.A.S. Markets, Inc.,* 113 B.R. 193 (Bankr.W.D.Pa.1990); *In re Baker & Getty Financial Services, Inc.,* 98 B.R. 300, 307 (Bankr.N.D.Ohio 1989); *In re Antweil,* 97 B.R. 63 (Bankr.D.N.M. 1988);[13] *Matter of Schneider,* 44 B.R. 961 (Bankr.W.D.Wis.1984); *In re Enterprise Fabricators, Inc.,* 36 B.R. 220 (Bankr.M.D. Tenn.1983);[14] *In re Larson,* 21 B.R. 264, 267 n. 2 (Bankr.D.Utah 1982).

Upon review of § 547(b)(4)(A) itself, as well as prior decisions interpreting this subsection, I agree with those decisions focusing upon a backwards method of counting. The language of section 547(b)(4)(A) represents a "reachback" period, *see In re Waner Corp.,* 89 B.R. 751, 754 (Bankr.N.D.Ill.1988) ("§ 547(b)(4)(A) ... [is] commonly referred to as the 'reachback' period"), rather than a limitations period, thus the use of the phrase "on or within 90 days before the date of filing." *Accord In re J.A.S. Markets, Inc.* The correct focus is upon the bankruptcy filing, not the transfer.

Indeed, this result draws implied support from decisions concerning the appropriate date that prejudgment interest begins to accrue in preference litigation. Interest does not run from the date of the preferential transfer, because the transfer is not improper in any respect at the time it occurs. The determination of a preference and the recovery of the transfer under section 550 are based upon a subsequent event—the transferor's bankruptcy filing—and upon a analysis of the debtor's financial structure within that bankruptcy (i.e., that the transferee would receive more if it retained the transfer than if the debtor's assets were liquidated). Because the transfer is initially proper, and because there must be some affirmative decision made, supported by section 547(b), to recover the

transfer, the consensus position is that prejudgment interest does not begin to accrue until some affirmative demand is made of the transferee to return the transfer. *See Smith v. Mark Twain Nat. Bank,* 805 F.2d 278, 291 (8th Cir.1986); *In re Independent Clearing House Co.,* 41 B.R. 985, 1015 (Bankr.D.Utah 1984), *aff'd in pertinent part,* 62 B.R. 118 (D.Utah 1986). Obviously, this demand cannot occur until after the bankruptcy case commences.

The concept of prejudgment interest is to "compensate for the loss of use of money due as damages from the time the claim occurs until judgment is entered...." *West Virginia v. United States,* 479 U.S. 305, 311 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987). If awarded, it usually runs from when the injury occurs—i.e., when the cause of action accrues. *Restatement (Second) of Torts,* § 913 (1979). That prejudgment interest does not run from the transfer reflects that no cause of action begins at that time.

It is the bankruptcy filing that gives rise to the right to demand a recovery of the transfer. It is from that date that measurements should be made. Therefore, any lien created in favor of Amquip on March 6, 1989 falls just outside the preference period.

## IV.

This conclusion is significant to this dispute. If Amquip was a secured creditor prior to 90 days before the debtor's bankruptcy filing then in general its assertion of a lien in this case would not be avoidable.[15] *See In re Aspen Data Graphics, Inc.,* 109 B.R. at 680–81. The debtor seeks to overcome this generality by arguing that on June 1, 1989 Amquip voluntarily surrendered its March 6th lien by way of settle-

---

13. This decision was affirmed upon appeal. *See In re Antweil,* 111 B.R. 337, 338 n. 1 (Bankr.D.N. M.1990).

14. Although I agree with the result in *Enterprise Fabricators, Inc.,* I do not support its reliance upon *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118 (6th Cir.1980). The analysis of *Rust* has not been accepted in this circuit. *See In re Day,* 102 B.R. 414, 415 (E.D.Pa.1989).

15. The converse is also true. If Amquip were unsecured just prior to the 90 period, any subsequently acquired lien would usually be avoidable, unless provisions such as section 547(c) were applicable. *See, e.g., In re McCoy,* 46 B.R. 9 (Bankr.D.Ariz.1984).

ment with the debtor. It reaches this conclusion by noting that the consent order states that "the confessed judgment entered on or about February 28, 1989 is hereby stricken."[16] It asserts a June 1, 1989 date for this surrender, even though the consent order was signed by Amquip in August 1989 and approved by state court in December 1989, because that is the date mentioned in the order itself. Thus, the debtor interprets the consent order as follows: Effective June 1, 1989, Amquip voluntarily surrendered its March 6, 1989 judgment lien for a lien of lesser amount; this lesser lien was completely new and formed as of June 1, 1989 (well within the preference period). In essence, the debtor asserts that there was an instant on June 1, 1989 when Amquip was unsecured—by virtue of its earlier lien having been stricken.

The debtor's analysis of the consent order omits any consideration of paragraph 2 of the order. If paragraph 1 of the order results in the March 6, 1989 lien being completely nullified, by its having been "stricken," and a new lien effective June 1, 1989 being created, how then is Amquip entitled to "post-judgment interest" from March 1, 1989, as the consent order states? The creditors' committee argues that this provision was the result of a compromise, and that the parties would have agreed to modify rather than strike the confessed judgment if they had intended to retain March 6, 1989 as the judgment date.

In my view, paragraph 2 contradicts paragraph 1, in part. Striking a judgment is inconsistent with providing judgment interest from an earlier date. No party presented any parole evidence on the issue of the intent behind this consent order. *See Linder v. Inhalation Therapy Services, Inc.*, 834 F.2d 306, 310–11 (3d Cir.1987); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 363–64 (3d Cir.1987). But, as the debtor has the burden of proof on all elements of section 547(b), *see* 11 U.S.C.

§ 547(g); *Decatur Contracting v. Belin, Belin & Naddeo*, and as the debtor's counsel appears to have drafted the document, ambiguities are resolved against the debtor. *See In re F.W. McGraw & Co.*, 473 F.2d 465, 468 (3d Cir.), *cert. denied*, 414 U.S. 1022, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973); *In re Temp–Way Corp.*, 82 B.R. 747, 751 (Bankr.E.D.Pa.1988).

Taken as a whole, the consent order appears to be a settlement of a dispute between Nelson and Amquip wherein Amquip agreed to the reduction of its judgment amount in return for Nelson's withdrawal of its challenge to the judgment.[17] It had a lien before the preference period began, and, (accepting *arguendo* the debtor's premise that the consent order should be viewed as occurring on June 1, 1989), it agreed to a smaller lien during the preference period. In that light, Amquip did not improve its position within the 90 day preference period by way of any transfer of estate assets. Thus, the debtor has not established the requisite elements of section 547(b). *See Lewis v. Diethorn*, 893 F.2d 648 (3d Cir.1990) (prepetition settlement of litigation not preferential when creditor held an unavoidable equitable lien); *In re Aspen Data Graphics, Inc.*

### V.

Both parties address, in the alternative, the legal significance of the time and method by which the consent order was signed by Amquip and approved by the state court. Amquip, for example, asserts that if any lien arose by virtue of the consent order, such a lien was a postpetition lien authorized by this court through the order granting relief from the stay and so protected by section 549(a)(2)(B). *But see In re Billick*, 67 B.R. 670, 673 (Bankr. W.D.Mo.1986) (in granting relief from the stay, a bankruptcy court does not necessarily approve the creation of a postpetition lien). The debtor argues that the order of

---

**16.** The February 28th date is in error. The correct date of the confessed judgment is March 6, 1989.

**17.** As referred to by the statement made to the state court on May 22, 1989, there was also an additional understanding between the parties not made part of the consent order concerning Amquip's ability to execute on the judgment.

state court was void because it was entered after the state court litigation was removed. The removal of the action deprived the state court of subject matter jurisdiction to act further, unless the matter was remanded back to the state court. *See generally* 1A *Moore's Federal Practice* ¶ 0.168[3.–8–4] (2d ed. 1989).[18] In addition, the debtor contends that the postpetition agreement of the parties to settle this dispute required notice to all creditors under Bankr.R. 9019 to be effective.[19]

Given my determination that Amquip held a nonavoidable judicial lien on March 6, 1989, and that any settlement, even if effective as of June 1, 1990 does not represent an avoidable transfer, it is unnecessary to decide these issues. Protection under section 549(a)(2)(B) would offer no additional rights to Amquip; furthermore, invalidating the consent order as the debtor suggests would leave Amquip as a secured creditor by virtue of its earlier confessed judgment.[20]

## VI.

In sum, then, Amquip bargained for and obtained the right to confess judgment when it initially dealt with Nelson Company. It exercised this right 91 days before

Nelson sought bankruptcy protection. A result of confessing judgment was to obtain a lien on Nelson's real property located in Delaware County Pennsylvania. The parties' settlement of the debtor's challenge to this confessed judgment, whether viewed as a prepetition or postpetition act, did not result in any avoidable "transfer" to Amquip. Therefore, the debtor's request to have Amquip declared a prepetition unsecured creditor is rejected. An appropriate order shall be entered.[21]

---

**18.** Obviously, if it were important to establish the jurisdiction of the state court, it would be necessary to determine whether my order of November 28, 1989 approving the agreement of the parties was in effect a consensual remand under 28 U.S.C. § 1452(b) and, if so, whether the procedure established in Bankr.R. 9027(e) and Rule 9033 can be waived. In addition, one could also argue about the validity of my approval of the parties' agreement to lift the stay before the District Court referred the removal proceeding to this court.

**19.** A settlement voluntarily reached is binding upon its parties. *E.g., Green v. John H. Lewis & Co.,* 436 F.2d 389 (3d Cir.1970). In bankruptcy cases, the purpose of Rule 9019 is to protect the interest of others who are not parties to the agreement and whose rights may be affected. Those who reach a settlement, though, are bound by its terms and may not challenge it, pending notice to others and subsequent court approval. *In re Tidewater Group, Inc.,* 8 B.R. 930 (Bankr.N.D.Ga.1981). *Accord* 9 *Collier on Bankruptcy* ¶ 9019.04 (15th ed. 1990). Here, both the debtor and the official committee of unsecured creditors, through their respective

counsel, approved the settlement with Amquip which resulted in the consent order.

**20.** While invalidating the consent order might theoretically reinstate Amquip's initial and larger judgment, Amquip's second amended proof of claim seeks only the smaller amount. It is that proof which will determine Amquip's distribution in this case.

**21.** My conclusion that no transfer occurred during the 90 day period which may be set aside under section 547(b) because Amquip held a lien before and throughout the preference reachback period makes it unnecessary to pass upon the debtor's motion, filed well after the conclusion of the trial, to reopen the record in this proceeding. The debtor sought to offer evidence that if the assets of the debtor were liquidated in chapter 7, unsecured creditors would not be paid in full; therefore, if Amquip were viewed as unsecured at any point during the 90 days prior to the debtor's bankruptcy filing, its current lien on debtor's property would enable it to receive more than unsecured creditors. I have concluded, though, that Amquip was never unsecured during this period.