**In re Michael J. FAILLACE, Debtor.**

**Michael J. Faillace, Plaintiff,**

**v.**

**Lucy Moriarty, Executrix of the Estate of Anthony Faillace, Marie Faillace, and Charles Dehart, Trustee, Defendants.**

Bankruptcy No. 5–99–01225.
Adversary No. 5–03–50147A.

United States Bankruptcy Court,
M.D. Pennsylvania.

March 2, 2004.

244

Carol W. Baltimore, Wilkes Barre, PA, for Debtor.

## *OPINION*

JOHN J. THOMAS, Chief Judge.

With regard to the disposition of this Complaint to Determine Secured Status, there appears to be no factual dispute between the parties.

Michael Faillace and Marie Faillace, now known as Marie DiFlavis, owned a certain parcel of property as tenants by the entireties. In 1992, Marie initiated a divorce action in the Court of Common Pleas of Luzerne County. After what appears from the Luzerne County docket to be a very litigious history, a Decree was finally entered on January 18, 1996. (DiFlavis Exhibit No. 1.) The Decree not only severed the matrimonial relationship but also divided the couple's marital estate. Among other things, the marital home at 1161 Jackson Road, Lehman Township,

Luzerne County, was awarded to Michael and he was directed to make a cash payment of $150,000.00 to Marie. An alimony award in favor of Marie was also entered, as was a direction that Michael pay 60% of Marie's counsel fees.

Apparently during the marriage, Michael's uncle, Anthony G. Faillace, made loans to Michael and Marie which were the subject of certain litigation brought by Anthony against Michael and Marie. On July 30, 1997, separate judgments in favor of Anthony were entered against Michael for $50,638.07, and Marie for $26,500.00.

On April 13, 1999, Michael filed bankruptcy in the Middle District of Pennsylvania.

On April 9, 2002, Marie finally delivered the deed for the real estate to Michael. (See Complaint at ¶ 18.)

The real estate has subsequently been sold free and clear of liens by the bankruptcy trustee who now holds the sum of $96,634.97. (See Complaint at ¶ 24.) The Order authorizing the sale of this property allowed valid liens to attach to the proceeds, ergo, the purpose of the immediate proceedings. (Amended Order Granting Debtor's Motion to Modify Order to Sell Free and Clear, filed 02/25/03, (Doc. # 91).)

## DISCUSSION

The parties to this proceeding include the Debtor, Michael Faillace, Marie Di-Flavis, and Lucy Moriarty, Executrix of the Estate of Anthony Faillace. The position of each can be summarized, as follows:

1. Michael Faillace argues that, at the time of bankruptcy, he and Marie were co-owners of the property. Since Marie had not as yet deeded the property to him, he advances that Marie could not encumber property to which he was not titled.

2. The Estate of Anthony Faillace argues that Michael's interest in the property is liened by the Estate's judgment, and Marie's interest should also be subject to the Estate's judgment.

3. Marie advances that the Decree of the Luzerne County Court encumbers the real estate by lien in her favor in the amount of $90,000.00 [1], plus attorney fees, pursuant to 42 Pa.C.S.A. § 4303(a). Marie's counsel argues that this lien primes the judgment of the Estate of Anthony Faillace.

Both the Estate and Michael argue that any distribution to Marie should be subject to the Estate's judgment against her.

 At the time the divorce proceedings were initiated, the real estate was owned by both Michael and Marie as tenants by the entireties. With the initiation of the divorce and a request for equitable distribution, the property passed into the custody of the court [2], thus preventing the attachment of any liens against the property. *Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 211, 565 A.2d 448, 452 (1989) allocatur granted, 527 Pa. 647, 593 A.2d 420 (1990); *Fidelity Bank v. Carroll*, 416 Pa.Super. 9, 13, 610 A.2d 481, 483 (1992). At best, judgments entered during this time period are viable only as to that which the party's interest turns out to be. *Weaver v. Weaver*, 413 Pa.Super. 382, 385, 605 A.2d 410, 412 (1992). In the case before me, no judgments were entered

---

**1.** Marie's counsel limits the claim to that amount deemed nondischargeable at trial before this court on May 10, 2000. In fact, the dischargeability of a claim against a debtor and its secured status against property of the estate are independent concerns. *Brooklyn*

*Jenapo Federal Credit Union v. Shain (In Re Shain)*, 47 B.R. 309 (Bkrtcy.E.D.N.Y.1985).

**2.** This process is known, generally, as *custodia legis*.

during the pendency of equitable distribution, suggesting that *custodia legis* has no application to these facts.

■ On the other hand, the award of the real estate to Michael Faillace had a very real impact on the rights of the parties. Property interests in bankruptcy are determined under state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). This is so because of the inherent unfairness of allowing bankruptcy to alter the property interests that may exist under established state law precedent. See generally, *Butner*, 440 U.S. at 55, 99 S.Ct. at 918. Michael Faillace was awarded the whole interest in the real estate in question by the state court, *subject to any obligations imposed upon him by the divorce court. Weaver*, 605 A.2d at 412 (emphasis added). Although Marie still held a legal interest in the property, the Decree stripped her of any equitable interest she may have held in the property.

■ Clearly expressed by the divorce court was the imposition of a $150,000.00 obligation in favor of Marie DiFlavis. When recorded in the proper county office, this award becomes, by statute, a lien against the real estate. 42 Pa.C.S.A. § 4303(a). In this case, the docket of the Faillace divorce case (No. 793–C of 1992) indicates that the Divorce Decree was filed on January 18, 1996. Furthermore, the award was also indexed in the "Cases affecting Realty" docket of Luzerne County also in January 1996[3]. It follows that Marie DiFlavis' January 1996 lien against the property has priority over Anthony Faillace's July 1997 judgment lien.

The Estate of Anthony Faillace relies on *Federal Land Bank of Baltimore v. Sustrik*, 367 Pa.Super. 582, 533 A.2d 169 (1987) for the proposition that the Order of distribution must be "indexed" in a certain docket in the county records. I do not read *Federal Land Bank* that narrowly. In fact, *Federal Land Bank* appears to hold that, in order for subsequent lien holders to be junior to other lien holders, the entry of the senior lien must appear on the public dockets. In *Federal Land Bank*, the court judgment was, presumably, merely placed on a shelf. Neither the case, nor the statute, requires specific indexing.

■ Alluding to the doctrine of *custodia legis*, Debtor's counsel argues that a lien against Michael's property was not possible until it was actually deeded to Michael. That did not occur until 2002, when Marie's legal interest in the real estate was conveyed to Michael. There is some support for this proposition to be found in *Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 212, 565 A.2d 448, 452 (1989). Nevertheless, later cases have focused on the date of distribution as defining the rights of the parties. *Keystone Savings Assoc. v. Kitsock*, 429 Pa.Super. 561, 568, 633 A.2d 165, 168 (1993) (Keystone only succeeded to whatever interest Dennis acquired in the marital property *at the time of equitable distribution*.)(emphasis added); *Weaver*, 605 A.2d at 412. It is well-grounded in property law that public policy encourages the free alienation of property. *Mid–State Bank & Trust Co. v. Globalnet International, Inc.*, 557 Pa. 555, 565, 735 A.2d 79, 84 (1999). In *Mid–State Bank & Trust Co.*, the Pennsylvania Supreme Court had the opportunity to discuss the doctrine of *custodia legis*, and while not discounting it, concluded that its applicability is not without limits. Specifically, it was argued that property deeded

---

**3.** The entry date on the index reads January 12, which would predate the Decree. I presume a latter date in January 1996 as being the proper indexing date.

to an ex-spouse pursuant to an equitable distribution order remained in *custodia legis* until it was actually paid for pursuant to a 15–year installment arrangement. Observing that this was an inordinate time, the court declined to extend the doctrine to such lengths. The plain import of the case was to embrace the doctrine, but only in a limited manner designed to allow the domestic court to address the marital interests.

 I conclude that *custodia legis* cannot be used to shelter the property beyond the date of the award of equitable distribution. I further conclude that execution of the deed pursuant to an award is a ministerial act that should not and does not delay the alienability of the property nor delay creditors from securing their debts. Consistent with this reasoning, I conclude that Marie's lien against the real estate, then 100% equitably owned by Michael, created by 42 Pa.C.S.A. § 4303, should prevail as prior in time to the judgment of the Estate of Anthony Faillace. The impact of the Estate's claim against Marie, a creditor of the estate, should be governed by separate proceedings under state law. See, for example, *In re Brickell*, 292 B.R. 705 (Bkrtcy.S.D.Fla.2003).

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that the lien of Marie DiFlavis has priority over the lien of the Estate of Anthony Faillace in the whole of the property and, therefore, in all its proceeds.