441 A.2d 1321

**SECURITY BANK AND TRUST COMPANY, Appellant,**

v.

**POCONO WEB PRESS, INC.**

Superior Court of Pennsylvania.

Argued March 9, 1981.

Filed Feb. 26, 1982.

William H. Robinson, Jr., Stroudsburg, for appellant.

Charles P. Eyer, Jr., Stroudsburg, for Lawton-Huffman, participating party.

Mark S. Love, Stroudsburg, for Marshalls, participating party.

Before HESTER, DISALLE and MONTGOMERY, JJ.

HESTER, Judge:

This appeal involves what appears to be a question of First impression in this Commonwealth, to-wit:

"Under the Mechanics' Lien Law of 1963, Act of August 24, 1963, P.L. 1175, No. 497, as amended, 49 P.S. Section 1101 et seq, if a contractor files a waiver of liens and commences work on a structure prior to the recording of a mortgage, may other contractors who thereafter contract directly with the owner of the property obtain priority over the mortgage, on the basis of a Mechanics' Lien claim, in the distribution of the proceeds of a Sheriff's Sale?"

The basic facts are not in dispute. On September 14, 1977, Robert N. Hartman, a foundation contractor, filed a Waiver of Liens in the Prothonotary's Office of Monroe County, waiving for himself and for his subcontractors the right to file any Mechanics' Lien claims concerning the construction of a commercial building. On or about the same date, "visible commencement" of the excavation work

for the commercial building began on property owned by Pocono Web Press, Inc. On October 6, 1977, appellant Bank recorded a construction mortgage from Pocono in the amount of $310,000.00.

Appellee Lawton-Huffman, Inc. entered into a separate and independent contract with the owner, Pocono, to provide heating and air conditioning services and materials. Lawton began work on December 1, 1977, finished its work on December 29, 1977, and was not paid. Lawton filed a Mechanics' Lien on March 9, 1978 in the amount of $6,095.00 against Pocono.

Appellee Marshalls Creek Electric, Inc. entered into a separate and independent contract with the owner to provide services and materials. Marshalls began work on November 12, 1977, finished on January 4, 1978, and was not paid. Marshalls subsequently filed a Mechanics' Lien claim in the amount of $1,500.00 against Pocono.

Both mechanics' lien claims were perfected and taken to judgment in due course, and not challenged below in any respect, except as to their priority over the construction mortgage.[1]

A Sheriff's Sale was held on June 20, 1979 on the basis of a default judgment obtained by the Bank in its mortgage foreclosure action against Pocono. The Bank made the highest bid of $20,000.00 plus costs, and when the Sheriff published his schedule, by which he indicated that costs had been collected and the balance covered by the receipt of counsel for the Bank, appellees Lawton and Marshalls filed written exceptions, requesting the appointment of an auditor pursuant to Pa.R.C.P. 3136.

The auditor filed a report, including findings of fact and conclusions of the law, granting appellees' exceptions to the proposed Sheriff's distribution, finding that the Mechanics' Lien claims of appellees were entitled to priority over the Bank's mortgage. The Court of Common Pleas of Monroe

---

1. The auditor took judicial notice of the claims, without objection, and counsel for the Bank stipulated that all of the facts in the claims were true, with a reservation concerning the priority issue.

County approved the auditor's report by Order dated April 10, 1980.

The Bank advances two alternative arguments in support of its contention that the lien of its mortgage is entitled to priority over appellees' mechanics' liens. First, the Bank contends that appellees' claims should be subordinated since they had notice of the Bank's mortgage. Secondly, the Bank contends that the Mechanics' Liens should be subordinated to its mortgage since both appellees contracted directly and independently with the owner and did not perform any work under the original contract with Hartman.[2]

We disagree and, therefore, affirm the lower court's order.

First, the Bank concedes that both appellees are "Contractors", as defined by 49 P.S. Section 1201(4), as opposed to "Subcontractors", as defined by 49 P.S. Section 1201(5).[3]

Since both appellees are "contractors" and since both appellees performed labor and services relating to the "erection and construction" (49 P.S. Section 1201(10)) of an "improvement" (49 P.S. Section 1201(1)) for the owner of the property, both appellees have a right to a lien pursuant to Article III of the Act, 49 P.S. Section 1301 et seq.

However, a claimant (contractor or subcontractor) may waive his right to file a lien pursuant to Article IV of the Act, 49 P.S. Section 1401 et seq.

Section 401 of the Act states:

"A contractor or subcontractor may waive his right to file a claim by a written instrument signed by him or by any conduct which operates equitably to estop such contractor or subcontractor from filing a claim."

49 P.S. Section 1401.

Section 402 of the Act states:

---

2. The Bank does not contend that the Mechanics' Liens are invalid or that appellees are bound by Hartman's Waiver of Liens.

3. Apparently, Hartman, the foundation contractor, was supposed to have been the "general contractor" for the entire project but he was not able to obtain appropriate bonding. Subsequently, the owner, Pocono, entered into separate and independent contracts with appellees.

"A written contract between the owner and contractor or a separate written instrument signed by the contractor, which provides that no claim shall be filed by anyone, shall be binding; but the only admissible evidence thereof, as against a subcontractor, shall be proof of actual notice thereof to him before any labor or materials were furnished by him; or proof that such contract or separate written instrument was filed in the office of the prothonotary prior to the commencement of the work upon the ground or within ten days after the execution of the principal contract or not less than ten days prior to the contract with the claimant sub contractor, indexed in the name of the contractor as defendant and the owner as plaintiff and also in the name of the contractor as plaintiff and owner as defendant. . ."

49 P.S. Section 1402.

The priority of the lien is determined by Section 508 of the Act, which states:

"The lien of a claim filed under this act shall take effect and have priority: (a) in the case of the erection or construction of an improvement, as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement; . . ."

49 P.S. Section 1508.[4]

██ Section 402 of the Act, 49 P.S. Section 1402, is not applicable to the instant case since Hartman's waiver of liens, which was filed on September 14, 1977, waived the right to file a Mechanics' Lien claim only for himself and his "subcontractors". The Bank concedes that the appellees are not "subcontractors".[5]

**4.** Since the relevant events in this case occurred prior to the enactment of the Judicial Code, we do not consider the applicability of 42 Pa.C.S.A. Section 8141, effective June 27, 1978.

**5.** We note that Section 402 of the Act, as well as other Sections of the Act, makes reference to "the contractor", and "the principal contract" which might indicate that the General Assembly contemplated that there would only be one "contractor" concerning the erection and construction of an improvement. However the bank

Concerning Section 401 of the Act, 49 Pa. Section 1401, it is clear that neither appellee explicitly waived its right to file a claim by any written instrument. The question thus becomes whether there was "... any conduct which operates equitably to estop such contractor or subcontractor for filing a claim".

In *Wood v. United States Steel Corporation,* 383 Pa. 158, 118 A.2d 199, 200 (1955), the Supreme Court stated "... that in the absence of an express covenant not to file a lien, the implied covenant not to do so must be so clearly stated that the mechanic or materialman cannot fail to understand it. [Citations omitted]."

In any event, in the instant case, we must assume that the Mechanics' Liens of both appellees are valid and that neither appellee waived its right to file a claim, since the Bank did not contest the validity of either Mechanics' Lien claim, except as to their priority.

Prior decisions of this Court have held that, since Mechanics' Liens "... are in derogation of the common law and since they effectively represent a special remedy in favor of a unique class of creditors, our Court [sic] have generally reviewed such claims with a strict construction of the statute which created them. [Citations omitted]" *Sampson-Miller v. Landmark Realty Company,* 224 Pa.Super. 25, 303 A.2d 43 (1973).[6]

In *Trustees of C. I. Mortgage Group v. Stagg of Huntington, Inc.,* 247 Pa.Super. 336, 372 A.2d 854 (1977), reversed 484 Pa. 464, 471, 399 A.2d 386, 389 (1979), the Supreme Court reversed a decision of this Court holding that we had improperly addressed an issue concerning the priority of a Mechanics' Lien claim, since the lien at issue was invalid due

concedes that both appellees are "contractors", as defined by the Act.

**6.** But see the Statutory Construction Act of 1972, 1 Pa.C.S.A. Section 1928(a) which states:
"The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937."

to a stipulation against Mechanics' Liens. Clearly, the instant case is distinguishable, since the Bank does not contest the validity of the liens, but only their priority. Accordingly, we only address that issue.

■ We hold that the language of Section 508 of the Act, 49 P.S. Section 1508, is so clear and unmistakable that there can be no question that the Mechanics' Liens of appellees are entitled to priority over the Bank's mortgage. Appellees' lien attached ". . . as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement", on or about September 14, 1977, which was prior to the recording of the Bank's mortgage on October 6, 1977. The Bank does not contend that the mortgage was recorded prior to the "visible commencement upon the ground of the work".

Our decision is consistent with our prior decision in *Mar Ray, Inc. v. Schroeder*, 242 Pa.Super. 14, 17, 363 A.2d 1136, 1137 (1976), in which we held that a sub-contractor's allegation, that a Mechanics' Lien claim was filed pursuant to a second contract which, unlike the first contract with the initial general contractor, did not contain a waiver of lien, was sufficient to withstand preliminary objections, by stating, "If the lien claim was filed pursuant to a second contract which contained no waiver, it appears that appellant would be entitled to file the lien claim [Citations omitted]."

We are not unmindful of the plight of the Bank in this matter. In its Brief, appellee/Lawton contends:

"It would be well to remember that the predicament of the Bank in this case is largely self-created. It complains it could not guard against the Mechanics' Liens arising from contracts made after the recording of its mortgage. But it could have insisted on proof that work had not commenced before making its loan. It could have inspected the sight. More importantly, if its system for advancing money had involved some simple method of verification, there would have been no Mechanics' Liens since all of the contractors would have been paid."

However, we realize that it may be extremely burdensome for a lending institution to inspect a construction site on a daily basis, so as to absolutely preclude any "contractor" from performing any work, separately and directly for the owner, independent of the original construction contract. Mindful as we are, we cannot address this policy consideration on the basis of the clear language of Section 508 of the Act, 49 P.S. Section 1508.[7]

Order affirmed.

DiSALLE, J., did not participate in the consideration or review of this case.

---

**7.** We have been advised that the other issue raised by the Bank on appeal, concerning a Commonwealth corporate tax claim against Pocono, has been resolved and rendered moot.