**COMMERCE BANK/HARRISBURG, N.A.,**

v.

**Stephen F. KESSLER & Lisa K. Kessler.**

**Michael Kevin Ricker**

v.

**Metro Bank, f.k.a. Commerce Bank of Harrisburg, N.A.**

**Appeal of Metro Bank, f.k.a. Commerce Bank of Harrisburg, N.A.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2011.

Filed May 9, 2012.

Reargument Denied July 19, 2012.

Debra P. Fourlas, Harrisburg, for appellant.

John G. Milakovic, Harrisburg, for Ricker, appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER*, JJ.

* Retired Senior Judge assigned to the Superior Court.

OPINION BY OLSON, J.

Appellant, Metro Bank, f.k.a. Commerce Bank of Harrisburg, N.A. ("Metro Bank"), appeals from the order determining that, pursuant to the Mechanics' Lien Law, 49 Pa.C.S.A. § 1101 *et seq.*, a judgment entered in favor of Appellee, Michael Ricker ("Ricker"), and against Stephen F. Kessler and Lisa K. Kessler (the "Kesslers"), takes priority over a judgment entered in favor of Metro Bank and against the Kesslers. Upon review, we affirm the trial court's declaratory judgment, but on other grounds.

The record reflects relevant factual and procedural background of this matter as follows:

On October 10, 2006, the Kesslers contracted with Ricker to build a luxury home in Harrisburg, Pennsylvania. On October 18, 2006, Ricker started excavation on the Kesslers' lot. On January 12, 2007, the Kesslers contracted with Commerce Bank of Harrisburg, N.A. ("Commerce Bank"), now Metro Bank, for a construction loan of up to $435,000 with an open-ended mortgage, which was recorded on January 24, 2007. The home was substantially complete as of August 1, 2007.

Because the Kesslers were unable to make their mortgage payments, Metro Bank filed a mortgage foreclosure action on May 22, 2008, against the Kesslers. On July 24, 2008, Metro Bank obtained a default judgment against the Kesslers for $403,994.84. The Kesslers also failed to make their payments to Ricker. Consequently, on February 24, 2009, Ricker obtained a default judgment against the Kessler's in the amount of $411,304.14. On February 26, 2009, the Kesslers filed for bankruptcy. On November 24, 2009, Metro Bank obtained relief from the automatic stay provision of the Bankruptcy Code [1] to proceed to a sheriff's sale.

On July 13, 2010, Metro Bank and Ricker filed a "Joint Emergency Motion To Stay Sheriff's Sale And Adjudicate Lien Priority Dispute." The trial court ordered that the sheriff's sale be stayed pending briefing and argument. On February 25, 2011, the trial court entered an order holding that the judgment entered in favor of Ricker enjoys priority over the judgment entered in favor of Metro Bank. On March 7, 2011, Metro Bank filed a motion for post-trial relief, and on March 10, 2011, Metro Bank filed a notice of appeal to this Court attempting to initiate an appeal of the trial court's February 25, 2011 order. The trial court did not issue an order disposing of Metro Bank's motion for post-trial relief. Therefore, the motion was denied by operation of law. *See* Pa. R.Civ.P. 227.4.

On March 23, 2011, the trial court issued an order requiring Metro Bank to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925. Metro Bank complied with the trial court's order, and on May 13, 2011 the trial court issued its opinion pursuant to Rule 1925.

Metro Bank presents three issues for appeal:

Under the Mechanics' Lien Law, 49 P.S. § 1508(c)(2), as amended June 29, 2006, effective January 1, 2007, does an open-end mortgage dated January 12, 2007 have priority over a statutory mechanics' lien based on construction begun on October 18, 2006?

Did the trial court err as a matter of law in assigning priority to a statutory mechanics' lien, where the construction contract did not provide for a mechanics' lien to be perfected at the time the contract was executed?

1. 11 U.S.C. § 362.

Did the trial court err as a matter of law in assigning priority to a statutory mechanics' lien, where the lien claim failed to contain the statutorily mandated statement of the kind and nature of the labor and materials furnished?

Metro Bank's Brief at 2.

■ Prior to considering the merits of Metro Bank's appeal, we address whether the trial court's February 25, 2011 order is interlocutory. Our Court may reach the merits of an appeal taken from "(1) a final order or an order certified as a final order (Pa.R.A.P. 341);[2] (2) an interlocutory order [appealable] as of right (Pa.R.A.P. 311); (3) an interlocutory order [appealable] by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313)." *Stahl v. Redcay,* 897 A.2d 478, 485 (Pa.Super.2006) (citation omitted).

■ Under Pennsylvania law, the priority of liens recorded against foreclosed property is usually established by filing exceptions to the sheriff's schedule of distribution **after** a sheriff's sale has occurred. *See* Pa.R.Civ.P. 3136; *Metro. Fed. Sav. & Loan Ass'n of E. Pennsylvania v. Bailey,* 244 Pa.Super. 452, 368 A.2d 808, 811–812 (1976). Therefore, orders in foreclosure actions establishing lien priority are generally not final until **after** the sheriff's sale has occurred. *Metro. Fed. Sav. & Loan Ass'n of E. Pennsylvania,* 368 A.2d at 811–812.

■ Given that there has yet to be a sheriff's sale of the subject property in this action, at first glance the trial court's February 25, 2011 order appears to be interlocutory. Metro Bank, however, argues that, "although the procedural posture of

the case was somewhat unusual, the proceeding below was in the nature of a declaratory judgment on the lien priority issue, and the decision was therefore final and appealable." *Metro Bank's Application for Reargument or Reconsideration at* p. 2. We agree.

Specifically, 42 Pa.C.S.A. § 7532 defines declaratory judgment actions. Pursuant to that statute:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532. Furthermore, given that Section 7532 expressly defines declaratory judgments as final orders, our Courts have held that orders resolving declaratory judgments are immediately appealable. *See Motorists Mut. Ins. Co. v. Pinkerton,* 574 Pa. 333, 830 A.2d 958, 964 (2003).

■ In this matter, a sheriff's sale was originally scheduled, however, given a recent change in the Mechanics' Lien Law, a dispute arose regarding lien priority. Considering the uncertainty of the law, and the parties' need to intelligently bid at the sheriff's sale, the parties agreed to stay the matter and obtain a decision on the lien priority statute. In so doing, the parties initiated a proceeding in the nature of a declaratory judgment action.[3]

---

**2.** *See also* 42 Pa.C.S.A. § 742 ("The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . .").

**3.** Under Pennsylvania law, we rely upon the substance of a pleading to determine the form of action. *Stackhouse v. Commonwealth,* 574 Pa. 558, 832 A.2d 1004, 1008–1009 (2003).

On July 13, 2010, the trial court issued the stay and ordered discovery and briefing on the lien priority issue. On February 11, 2011, the trial court heard oral argument on the lien priority issue, and on February 25, 2011, the trial court issued its order. That order established the priority of liens recorded against the subject property. Therefore, we agree with Metro Bank that the order issued on February 25, 2011 was in the nature of a declaratory judgment and is therefore immediately appealable.[4] Consequently, we have jurisdiction to consider the merits of the appeal.

 Our review of a trial court's disposition of a declaratory judgment is governed by the following standard of review:

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

*State Automobile Mut. Ins. Co. v. Christie,* 802 A.2d 625, 627–628 (Pa.Super.2002) (citations and quotations omitted). Additionally,

> [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application

of the law, however, is always subject to our review.

*O'Brien v. Nationwide Mut. Ins. Co.,* 455 Pa.Super. 568, 689 A.2d 254, 257 (1997) (citation omitted). Neither party in this matter disputes the relevant factual circumstances. Therefore, we focus on the trial court's application of the law to this case.

Specifically, Metro Bank's first two issues on appeal challenge application of the amendments to the Mechanics' Lien Law, effective January 1, 2007, to the liens at issue in this matter. In particular, Section 1508 of the Mechanics' Lien Law sets forth the priority of liens. The 2007 amendments added exceptions to Section 1508 that did not previously exist. Application of those exceptions could potentially affect the priority of the two liens at issue in this matter. Ricker argues that the prior version of the Mechanics' Lien Law applies to this matter. The trial court agreed, and applied the prior version of the Mechanics' Lien Law, therefore giving Ricker's lien priority. On appeal, Metro Bank argues that the trial court's application of the prior version was an error of law, and that, under the amended version of the Mechanics' Lien Law, its lien takes priority. We, therefore, review the trial court's determination of which version of the Mechanics' Lien Law to apply to the facts and circumstances of this case.

---

Therefore, while the parties did not properly title the pleadings in this matter as a complaint in declaratory judgment, we are not foreclosed from holding that the nature of the trial court's February 25, 2011 order was, indeed, a declaratory judgment.

4. Though uncommon, Pennsylvania precedent establishes the use of declaratory judgment proceedings for lien priority determinations. *See Grambo et al. v. South Side Bank & Trust Co.,* 141 Pa.Super. 176, 14 A.2d 925, 926–927

(1940) (approving of use of declaratory judgment proceedings to resolve the dispute of lien priority over two competing mortgages, prior to the judgment execution sale), *see also Conemaugh Iron Wks. Co. v. Delano Coal Co.,* 298 Pa. 182, 148 A. 94, 96 (1929) ("[w]e think that, if there is a fear of this mortgage being discharged by the proposed sheriff's sale, the status of the mortgage and the rights of the mortgagee can be determined in proceedings under the Declaratory Judgments Act").

Immediately prior to the amendments to the Mechanics Lien Law, Section 1508(a) of that act stated, without limitations, that:

[t]he lien of a claim filed under this act shall take effect and have priority in the case of the erection of construction of an improvement as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement.

49 Pa.S.A. § 1508.

Thereafter, on January 1, 2007, the amendments to the Mechanics' Lien Law took effect. At that time, Section 1508 was amended to read as follows:

The lien of a claim filed under this act shall take effect and have priority as follows:

(a) Except as set forth in subsection (c), in the case of the erection or construction of an improvement, as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement.

(b) Except as set forth in subsection (c), in the case of the alteration or repair of an improvement, as of the date of the filing of the claim.

**(c) Any lien obtained under this act by a contractor or subcontractor shall be subordinate to the following:**

(1) A purchase money mortgage as defined in 42 Pa.C.S. § 8141(1) (relating to time from which liens have priority).

**(2) An open-end mortgage as defined in 42 Pa.C.S. § 8143(f) (relating to open-end mortgages), the proceeds of which are used to pay all or part of the cost of completing erection, construction, alteration or repair of the mortgaged premises secured by the open-end mortgage.**

49 Pa.S.A. § 1508, *amended* June 29, 2006, P.L. 210, No. 52, § 3, effective January 1, 2007 (emphasis added).

In this matter, on October 10, 2006, the Kesslers contracted with Ricker. On October 18, 2006, Ricker started excavation on the Kessler's lot, and as of October 26, 2006, the footers were in place. In other words, visible commencement of work upon the ground occurred in October 2006—before the amendments to Section 1508 took effect.

Thereafter, on January 12, 2007, three months after construction began, and, significantly, after the effective date of the amendment set forth above, the Kesslers contracted with Commerce Bank (now Metro Bank) for a construction loan of up to $435,000, with an open-end mortgage. That open-end mortgage was recorded on January 24, 2007.

Ricker argues that his lien takes priority because the old Mechanics' Lien Law was in effect at the time that he contracted with the Kesslers. Ricker's Brief at 11–16. Applying contractual principles of law, Ricker argues that the laws that are in force at the time that the parties execute a contract merge into that contract. *Id.* at 11. To apply the amended version of the Mechanic's Lien Law, Ricker argues, would allow the amended law to retroactively change the force and effect of his contract with the Kesslers. *Id.* at 12.

Furthermore, Ricker argues that to read the 2007 amendment as applying to his lien would violate fundamental principles of statutory construction, in particular 1 Pa.C.S.A. § 1926, mandating that no statute should be construed retroactively unless clearly intended to do so by the Legislature. *Id.* at 13.[5] In support of his

---

**5.** Section 1926 states that: "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926.

argument, Ricker relies upon *First National Bank of Pa. v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987), where our Supreme Court held that amendments to a loan law could not be applied retroactively because those amendments would abridge rights formed under a prior contract. Similarly, Ricker argues that to apply the 2007 amendments to the Mechanics' Lien Law to his lien would abridge the contract he made with the Kesslers. Ricker's Brief at 14.

The trial court agreed with Ricker's application of contractual principles. Trial Court Opinion, 5/13/2011, at 3.[6] Furthermore, the trial court relied upon *Security Bank and Trust Co. v. Pocono Web Press*, 295 Pa.Super. 455, 441 A.2d 1321 (1982), for the principle that predicaments regarding lien priorities can be largely "self-created." *Id.* Under the trial court's analysis, "had [Metro Bank] done its due diligence in determining the status of construction prior to extending the loan, this situation would not have been created." *Id.* at 4. Consequently, the trial court held that Ricker's lien takes priority over Metro Bank's. *Id.* at 4–5.

Metro Bank argues on appeal that the trial court's judgment, applying the prior version of Section 1508 to this case, is an error of law. The heart of Metro Bank's argument rests upon the distinction between contractual rights and statutory rights. *See* Metro Bank's Moving Brief at 8–9. Metro Bank concedes the contractual principles relied upon by Ricker, holding that rights established by contract, such as those in a mortgage, may not be infringed upon by subsequent legislation. *Id.* at 9. However, Metro Bank argues that rights provided for by the Mechanics' Lien Law

did not exist at common law and are purely statutory creations—they are not established by contract. *Id.* As such, Metro Bank believes that Ricker's and the trial court's application of contractual principles to this matter is an error of law.

Rather, Metro Bank argues that the rights created by the Mechanics' Lien Law are statutory remedies that "may be bestowed, altered, or repealed at the will of the legislature, even when they predate the legislature's action." *Id.* Given that, under Metro Bank's analysis, any amendment to the Mechanics' Lien Law simply alters a **statutory remedy** (and not a contractual right), therefore Metro Bank argues that the principles of statutory construction relied upon by Ricker and the trial court are inapplicable. *Id.* Likewise, because Metro Bank believes that there is a fundamental difference between contractual rights and statutory remedies, it asserts that Ricker's and the trial court's reliance upon precedent interpreting contractual rights, such as *First National Bank of Pa.*, is also misplaced. *Id.* at 12–13.

Furthermore, even if contractual principles did apply to this matter, Metro Bank points out that if the Legislature had intended to preclude application of the amendments to Section 1508 to contracts formed prior to the effective date of the amendments, it had the ability and knowledge to do so, but did not. *Id.* at 10. Specifically, the historical and statutory notes to the bill passing the amendments expressly state that "[t]he amendment or addition of sections 201(14), 401 and 402 of the act shall apply to contracts entered into on or after [January 1, 2007]." P.L. 210, No. 52, June 29, 2006, Section 4.[7] The

---

6. The pages within the trial court opinion are not numbered. We have added page numbers for ease of reference.

7. Sections 201(14), 401, and 402 respectively relate to the definition of "residential property," waiver of liens by a claimant, and waiver by a subcontractor; effect on a subcontractor.

historical and statutory notes of the amendments make no mention of Section 1508, governing lien priority. By making some sections of the amendments expressly prospective, while remaining silent as to others, Metro Bank argues that the Legislature implicitly intended to apply those other sections retroactively. *See* Metro Bank's Moving Brief at 10 ("The legislature manifestly intended to apply the amended lien priority hierarchy to preexisting construction.").

Finally, Metro Bank argues that the trial court's reliance upon the "self-created" predicament can cut both ways. While Metro Bank could have insisted on proof that work on the property had not yet commenced, the amendments to the Mechanics' Lien Law were passed on June 29, 2006, before Ricker entered into a contract with the Kesslers or began work on the property. While Metro Bank acknowledges that Ricker commenced work prior to the effective date of the amendment, Ricker, like Metro Bank, was on notice of the impending change. As a result, Metro Bank argues that it "was in no better position than Ricker to avoid the priority dispute." *Id.* at 13.

Notwithstanding the well-developed arguments of both sides, our resolution of the retroactivity issue turns on the plain language of Section 1508 of the amended Mechanics' Lien Law. Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Board,* 601 Pa. 449, 974 A.2d 1144, 1149 (2009), *citing* 1 Pa.C.S.A. § 1921. Furthermore, "[i]n reading the plain language, 'words and phrases shall be construed according to rules of grammar and according to their common and approved usage,' while any words or phrases that have acquired a 'peculiar and appropriate meaning' must be construed according to that meaning." *Id., quoting* 1 Pa.C.S. § 1903(a).

Section 1508, as amended, states that, "**[a]ny lien obtained under this act** by a contractor or subcontractor shall be subordinate to ... [a]n open-end mortgage ..." 49 Pa.S.A. § 1508 (emphasis added). The use of the term "any" is unequivocal, meaning that the amendment applies to **all** liens obtained after the effective date, regardless of whether the work on the contract secured by the lien commenced prior to the effective date of the amendment. While Ricker and the trial court rely upon 1 Pa.C.S.A. § 1926 for the principle that statutes are not to apply retroactively unless clearly intended by the Legislature, we believe that the plain language of the amended Section 1508 makes the Legislature's intent clear.

Indeed, we agree with Metro Bank that the Legislature's mention of certain sections of the Mechanics' Lien Law within the statutory notes, clarifying that those sections apply prospectively, while not mentioning Section 1508, indicates to us that the Legislature intended the amendments to Section 1508 to apply to liens that were obtained **after** the effective date of the amendments even though they resulted from contracts entered into **before** the effective date of the amendments. *See Fletcher v. Pennsylvania Property & Cas. Ins. Guar. Ass'n,* 603 Pa. 452, 985 A.2d 678, 684 (2009) ("where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent").

Consequently, we hold that the trial court committed an error of law to the extent that it concluded that the previous version of Section 1508 of the Mechanics' Lien Law determined the priority of the liens in this matter. Given the plain lan-

guage of the amendments to Section 1508, which took effect on January 1, 2007, the amended language of Section 1508 applies to **all** liens obtained under the amended act, whether or not work on the subject property or the underlying contract for the subject property commenced prior to January 1, 2007.

■ However, our analysis does not end there. To the contrary, Ricker argues that, even if the amended version of Section 1508 applies to establish lien priority in this case (which it does), the open-end mortgage upon which Metro Bank bases its lien does not satisfy the exception set forth in Section 1508(c)(2). Ricker's Brief at 17–19. We agree.

Specifically, the amended version of Section 1508(c)(2) awards priority to a mortgage over a mechanics' lien where the mortgage constitutes:

> (2) An open-end mortgage as defined in 42 Pa.C.S. § 8143(f) (relating to open-end mortgages), **the proceeds of which are used to pay all or part of the cost of completing erection, construction, alteration or repair of the mortgaged premises** secured by the open-end mortgage.

49 Pa.S.A. § 1508(c)(2) (emphasis added). With regard to application of that exception to this matter, neither party disputes that the loan issued by Metro Bank is an open-end mortgage. Furthermore, and significantly, neither party disputes that a portion of the proceeds of the open-end mortgage in this matter paid for expenses other than "completing erection, construction, alteration or repair of the mortgaged premises." [8] The parties, however, dispute what effect use of proceeds for expenses other than those enumerated in Section 1508(c)(2) has on the application of that exception.

Ricker argues that use of any portion of the proceeds to pay expenses other than those set forth in Section 1508(c)(2) wholly defeats application of that exception. Ricker's Brief at 17–19. Furthermore, Ricker argues that to allow use of funds for reasons other than expressly set forth in Section 1508(c)(2) would, for example, permit a lender and owner to defeat lien rights by using as little as $1.00 out of a $1,000,000.00 for the enumerated purposes. *Id.* at 18. Consequently, Ricker argues that Metro Bank cannot rely upon Section 1508(c)(2) to subordinate Ricker's mechanics' lien on the property. *Id.*

■ Metro Bank disputes Ricker's interpretation of Section 1508(c)(2), arguing that such a narrow reading of the act is impractical and contrary to the law.[9] Metro Bank's Reply Brief at 6. As Metro Bank explains, Section 1508(c)(2) refers to open-end mortgages as defined in 42 Pa.C.S. § 8143(f). Section 8143(f) contains defini-

---

**8.** Indeed, for purposes of the underlying proceedings, the parties stipulated that portions of the proceeds of the open-end mortgage paid for costs such as tax claims, closing costs, satisfaction of an existing mortgage on the property, and payment of other judgments and liens. Of the $255,239.58 of loan proceeds that were disbursed at the loan closing, it appears that more than $95,000 was used to pay for things other than "completing erection, construction, alteration or repair of the mortgaged premises."

**9.** Based upon the record before us, it is unclear whether Metro Bank expressly preserved its opposition to Ricker's argument that use of the mortgage proceeds for purposes other than those enumerated in Section 1508(c)(2) disqualified the mortgage at issue in this matter from qualification for that exception. However, given that Metro Bank's motion for post-trial relief argues that the mortgage at issue in this matter is the type contemplated by Section 1508(c)(2), we broadly interpret that argument as having preserved Metro Bank's opposition in that regard.

tions for multiple terms for use in that particular section, not just open-end mortgage. One of the other terms defined by Section 8143(f) is "indebtedness." 42 Pa. C.S.A. § 8143(f). Because the definition of "indebtedness" includes expenses such as the unpaid principal balance of advances and closing costs (expenses that Ricker argues are not contemplated by Section 1508(c)(2)), and because the definition of "indebtedness" and "open-end mortgage" are within the same statutory section, Metro Bank argues that they must be read together as inclusive of one another. Metro Bank's Reply Brief at 7. Therefore, Metro Bank argues that proper interpretation of Section 1508(c)(2) permits payment of expenses other than "completing erection, construction, alteration or repair of the mortgaged premises." *Id.* at 7–8. Furthermore, Metro Bank argues that other subsections of Sections 8143, and even 42 Pa.C.S. § 8144, should be permitted to dictate lien priority set forth in Section 1508. *Id.* at 7–9.

Metro Bank's arguments, however, disregard the clear language of Section 1508 and strain interpretation. Specifically, the language of Section 1508(c)(2) clearly enumerates what the proceeds of the open-end mortgage may be used to fund in order to qualify for the exception. *See* 49 Pa.S.A. § 1508(c)(2). Moreover, because Section 1508(c)(2) extends priority only to mortgage loans where "the proceeds of which are used to pay" the enumerated expenses, the language of the provision expressly excludes the expenditure of loan proceeds on uses other than those listed in the statute. We interpret the use of the terms "the proceeds" to mean **all** of the proceeds. Indeed, we agree with Ricker that any other interpretation of the statute would permit lenders and owners to improperly manipulate the system to defeat lien rights. Such a result would be absurd and therefore contrary to legislative intent.

*See* 1 Pa.C.S.A. § 1922 ("In ascertaining the intention of the General Assembly in the enactment of a statute [we presume that the] General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.")

Furthermore, we hold that Metro Bank's argument in favor of application of other definitions set forth in 42 Pa.C.S.A. § 8143 and Section 8144 lacks merit. Indeed, Section 1508(c)(2) expressly refers to the definition of "open-end mortgage" as set forth in 42 Pa.C.S.A. § 8143(f). Significantly, Section 1508 does not refer to any other terms (such as "indebtedness") set forth in 42 Pa.C.S.A. § 8143. In other words, if the Legislature had wanted the exception set forth at Section 1508(c)(2) to include the definition of those other terms, it could have expressly set forth those terms, but it did not.

Consequently, Metro Bank's arguments against limiting application of the exception set forth at Section 1508(c)(2) to those situations where **all** of the proceeds of the subject mortgage "are used to pay all or part of the costs of completing erection, construction, alteration or repair of the mortgaged premises" are without merit. We therefore hold that the exception set forth at Section 1508(c)(2) does not apply in this matter.

Metro Bank's second issue on appeal attacks the validity of Ricker's mechanics' lien, arguing that the lien is invalid because the lien claim allegedly failed to contain the statutorily mandated statement of the kind and nature of the materials furnished. Metro Bank's Moving Brief at 15–17. Therefore, Metro Bank argues that Ricker's lien claim is defective as a matter of law, and should be invalidated. *Id.* at 17.

Pursuant to 49 P.S. § 1503(5), entitled "contents of [a mechanics' lien]

claim," any claim filed under the Mechanics' Lien Law shall state, *inter alia,* "a general statement of the kind and character of the labor or materials furnished." Neither party in this matter disputes that Ricker's lien claim described the kind and character of the work as "all labor and materials required for the construction of a two story residential dwelling," and referred to the construction contract. The contract described the scope of the work as "furnish[ing] all the materials and perform[ing] all the work shown on the drawings . . . attached hereto . . . and described in the specifications . . . which are likewise attached hereto." Ricker's lien claim, however, failed to attach the referenced drawings or specifications describing the work.

Metro Bank argues that, given the absence of the referred to drawings and specifications, the statement of the kind and character of the labor and materials furnished was too vague, therefore invalidating the lien. Ricker, however, argues that substantial compliance is all that is necessary to satisfy Section 1503(5), and that the statements made in the lien claim (even in the absence of the referred to attachments) substantially complied with that section. Therefore, Ricker argues that the lien is valid.

We agree with Ricker's substantial compliance argument. Indeed, multiple Pennsylvania cases interpreting the "contents of the claim" section of the Mechanics' Lien Law have long held that "[i]n considering a mechanics' lien claim it must be kept in mind that substantial compliance with the Act is sufficient. This is shown to exist wherever enough appears in the statement to point the way to successful inquiry." *Marchak v. McClure,* 176 Pa.Super. 381, 108 A.2d 77, 79 (1954); *see also Denlinger, Inc. v. Agresta,* 714 A.2d 1048, 1053 (Pa.Super.1998).[10] Moreover, the express terms of Section 1503(5) require only a "**general statement** of the kind and character of the labor or materials furnished." *See* 49 Pa.S.A. § 1503(5). Other sections of the statute, however, require "a **detailed statement.**" *See* 49 Pa.S.A. § 1503(6).[11]

Considering that the Kesslers hired Ricker to construct a new home, and considering that the lien claim referenced and attached the contract for that work, we hold that the lien claim provided the Kesslers and Metro Bank with ample information to "point the way to successful inquiry." The absence of the referred to drawings and specifications does not defeat Ricker's lien. Consequently, Metro Bank's argument attacking the validity of Ricker's lien on that basis is without merit.

Therefore, in summary, we hold that the amended version of 49 P.S. § 1508, effective January 1, 2007, applies to this matter.

---

**10.** In *Denlinger, Inc.* we quoted our own precedent explaining that:

[A]ll the cases agree that a substantial compliance is sufficient, and this is shown to exist wherever enough appears, on the face of the statement, to point the way to successful inquiry. Adherence to the terms of the statute is indispensable, but the rule must not be pushed into such niceties as to serve but to perplex and embarrass a remedy intended to be simple and summary, without, in fact, .adding anything to the security of the parties having an interest in the building sought to be encumbered. Certainty to a common intent has, therefore, always been held to suffice.

*Denlinger, Inc.,* 714 A.2d at 1053, (*quoting Tesauro v. Baird,* 232 Pa.Super. 185, 335 A.2d 792, 793–794 (1975)).

**11.** While we make no judgment as to whether the statement in this matter would have been sufficient to comply with Section 1503(6), comparison of the language used in that section with the language used in Section 1503(5) is significant.

However, we further hold that the exception set forth at 49 P.S. § 1508(c)(2) does not apply to this matter. Finally, we hold that the mechanics' lien claim in this matter fulfilled the requirement of 49 P.S. § 1503(5). Therefore, though on other grounds, we affirm the trial court's holding that the judgment against the Kesslers in favor of Michael Ricker must take priority over the judgment entered against the Kesslers in favor of Commerce Bank, now Metro Bank. Trial Court Opinion, 5/13/2011, at 4–5.

Order affirmed.

Judge STRASSBURGER files a Dissenting Opinion.

## DISSENTING OPINION BY STRASSBURGER, J.

I respectfully disagree that a motion to determine lien priority should be considered in the nature of a declaratory judgment action and thus immediately appealable; accordingly, I dissent and offer the following analysis.

This case was initiated as a mortgage foreclosure action and both parties agreed to stop the sheriff's sale prior to its occurrence and ask the trial court to determine lien priority. The trial court held that Ricker's mechanics' lien had priority over Metro Bank's mortgage. Bank has appealed.

The Majority holds that the joint request for a determination of lien priority is "in the nature of a declaratory judgment action, and since declaratory judgments are final orders, the court's determination of lien priority is a final, appealable order."

You can call a cat a dog, but it is still a cat. This is not a declaratory judgment action; it is a mortgage foreclosure action.

Our Pennsylvania Rules of Civil Procedure govern the process when lien priority is disputed. Specifically, lien priority is established by filing exceptions to the sheriff's schedule of distribution **after** a sheriff's sale has occurred.

The method and procedure by which competing lien creditors may litigate their claims to sale proceeds is established by [Pa.R.C.P.] 3136. Rule 3136(g) implicitly recognizes the right of appeal by any person aggrieved by the court's final disposition of exceptions to the sheriff's schedule of distribution. It authorizes the entry of an order that the sheriff invest the proceeds of sale pending final disposition of the exceptions or an appeal therefrom. It is clear that an appeal will lie from a final order sustaining or dismissing exceptions to a sheriff's schedule of distribution.

*Metro. Fed. Sav. & Loan Ass'n of E. Pennsylvania v. Bailey,* 244 Pa.Super. 452, 368 A.2d 808, 811–12 (1976) (internal quotations and citations omitted). Even though the parties and trial court agreed to this course of action, and it may be of some aid toward settlement as an advisory opinion, the order entered by the trial court is still an interlocutory order because it does not dispose of all claims and all parties. The parties have every right to ask the trial court to resolve a subsidiary issue in a case. That does not mean they have the right to appeal such a ruling.

There are myriads of subsidiary orders upon which parties desire rulings from a trial court. For example, in an ejectment action, has a party established ownership by adverse possession of a portion of the property? In an eminent domain case, where is the boundary line of the condemnee's property? In many civil actions, does the plaintiff have standing? Has the statute of limitations run? Is crucial testimony barred by the parol evidence rule? The list is endless.

Discouraging interlocutory appeals has long been a goal of this Commonwealth. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987); *Schaffer v. Litton Systems, Inc.,* 372 Pa.Super. 123, 539 A.2d 360 (1988); *In re Marino's Estate,* 440 Pa. 492, 269 A.2d 645, 646 (1970). In the interest of judicial economy, "[i]t is more important to prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." *Calabrese v. Collier Twp. Mun. Auth.,* 432 Pa. 360, 248 A.2d 236, 238 (1968) (O'Brien, J., Dissenting).

If the Majority were correct, the eloquent words of Justice (later Chief Justice) O'Brien would ring true today: "The bifurcated appeal foisted upon the courts can only be termed a judicial Hydra. Would that a Hercules could appear ... to slay this monster." *Hession Condemnation Case,* 430 Pa. 273, 242 A.2d 432, 437 (1968) (O'Brien, J., Dissenting).

Accordingly, I would quash the appeal as interlocutory.