J. A12040/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIC AND SIGRID KUNZ, H/W, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| TOLL BROTHERS, INC., | : | |
| TOLL PA II, L.P., TOLL PA GP CORP., | : | |
| BROAD RUN ASSOCIATES, L.P., | : | No. 3107 EDA 2017 |
| TOLL ARCHITECTURE, INC., AND | : | |
| TOLL ARCHITECTURE I, P.A. | : | |

Appeal from the Order August 14, 2017,
in the Court of Common Pleas of Chester County
Civil Division at No. 2016-01218-MJ

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                **FILED JULY 16, 2018**

Eric and Sigrid Kunz, husband and wife, appeal from the August 14, 2017 order entered in the Court of Common Pleas of Chester County denying their motion for reconsideration of the trial court's December 12, 2016 order granting the petition of appellees Toll Brothers, Inc.; Toll PA II, L.P.; Toll PA GP Corp.; Broad Run Associates, L.P.; Toll Architecture, Inc.; and Toll Architecture I, P.A. (collectively, "Toll Brothers"), to compel arbitration and reinstating the December 12, 2016 order.  We quash this appeal.

The trial court set forth the following:

**Procedural History**

On July 19, 2016, [appellants] filed their complaint because of what they contend are "substantial construction defects" and because of [Toll Brothers'] ["]misrepresentations regarding the quality of the construction" of their home. [Appellants'] complaint assert[s] claims against [Toll Brothers] for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count I), breach of express warranty (Count II), breach of implied warranty (Court III), negligence (Count IV), negligent supervision (Count V), and civil conspiracy (Count VI).

On August 31, 2016, [Toll Brothers] filed a petition to compel arbitration pursuant to arbitration language within the documents related to the purchase of [appellants'] home. [Appellants] opposed the petition arguing that the arbitration provisions in the governing documents were unenforceable "as they are indefinite[,] vague and contradictory." Following briefing by the parties, on December 12, 2016, the court entered an order granting [Toll Brothers'] petition to compel arbitration.

On December 22, 2016, [appellants] filed an emergency motion asking the court to reconsider its decision or amend its order for immediate appeal. On January 3, 2017, the court entered a new order striking its December 12th order compelling arbitration pending further consideration by the court. The parties also were given additional time to conduct discovery on the issue of the allegedly "different" arbitration provisions.

On January 12, 2017, [Toll Brothers] then filed their own motion to vacate, requesting that the court reinstate its original order compelling arbitration. On February 24, 2017, the court denied [Toll Brothers'] motion to vacate and clarified for the parties the issues that were the subject of the reconsideration order. After additional briefing and oral argument held on July 25, 2017, [appellants'] motion for reconsideration is now ripe for decision.

**The Relevant Arbitration Provisions**

There are two documents at issue in this dispute. The first is an "Agreement of Sale" ("AOS") between [appellants] and [appellee] Broad Run [Associates, L.P. ("Broad Run")]. The second document is a limited warranty entitled "Toll Brothers Limited Warranty" ("Limited Warranty"). Both documents contain arbitration provisions.

The arbitration clause in the AOS executed by [appellants] and Broad Run reads as follows:

> ARBITRATION : Buyer . . . hereby agrees that any and all disputes with Seller, Seller's parent company or their subsidiaries or affiliates arising out of the Premises, this Agreement, the Home Warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express and implied warranties, personal injuries and/or illness, mold-related claims, representations, and/or omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action ("Claims") shall be resolved by binding arbitration in accordance with the rules and procedures of Construction Arbitration Services, Inc. or its successor or an equivalent organization selected by Seller. If CAS is unable to arbitrate a particular claim, then that claim shall be resolved by binding arbitration pursuant to the Construction Rules of Arbitration of the American Arbitration Association or its successor or an equivalent organization selected by Seller. In Addition, Buyer agrees that Buyer may not initiate any arbitration proceeding for any Claim(s) unless and until Buyer has first given

Seller specific written notice of each claim (at 3103 Philmont Avenue, Huntingdon Valley, PA 19006, Attn: Warranty Dispute Resolution) and given Seller a reasonable opportunity after such notice to cure any default, including the repair of the Premises, in accordance with the Home Warranty. The provisions of this paragraph shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. and shall survive settlement.

The arbitration clause in the Limited Warranty between [appellants] and [appellee] Toll Brothers, Inc., reads as follows:

Any disputes between YOU and US related to or arising from this LIMITED WARRANTY will be resolved by binding arbitration. Disputes subject to binding arbitration include but are not limited to:

A. WE do not agree with YOU that a DEFICIENCY or DEFINED STRUCTURAL ELEMENT FAILURE is covered by the LIMITED WARRANTY;

B. WE do not correct a DEFICIENCY or DEFINED STRUCTURAL ELEMENT FAILURE to YOUR satisfaction or in a manner that YOU believe this LIMITED WARRANTY requires;

C. WE fail to respond to YOUR written notice of a DEFICIENCY or DEFINED STRUCTURAL ELEMENT FAILURE;

D.     Disputes related to COMMON Elements;

E.     Alleged breach of this LIMITED WARRANTY[;]

F.     Alleged violations of consumer protection, unfair trade practices, or other statutes;

G.     Disputes concerning the issues that should be submitted to binding arbitration;

H.     Disputes concerning the timeliness [to] binding arbitration requests.

Any binding arbitration proceeding will be conducted by an independent arbitration organization by the WARRANTY PROGRAM ADMINISTRATOR. The rules and procedures followed will be those of the designated arbitration organization. A copy of the applicable rules and procedures will be delivered to YOU upon request.

Trial court opinion, 8/14/17 at 1-3 (record citations omitted).

Following oral argument, the trial court entered its August 14, 2017 order denying appellants' motion for reconsideration of its December 12, 2016 order granting Toll Brothers' petition to compel arbitration and reinstating its December 12, 2016 order. On September 12, 2017, appellants filed a notice of appeal to this court. The trial court then ordered appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellants timely complied. In response, the trial court entered an order stating that "[t]he present appeal seeks review of an order directing this matter to arbitration [; however,] [u]nder Pennsylvania law, such an order is not final and appealable."[1] (Order of court, 10/4/17 at 1.)

On October 23, 2017, this court ordered appellants to show cause within ten days as to the basis of our jurisdiction over this matter. (Order of court, 10/23/17.) Appellants timely complied by filing a "brief in support of jurisdiction over this appeal." On November 16, 2017, this court discharged the show-cause order, referred the appealability issue to this merits panel, and directed the parties to be prepared to address the issue in their briefs and at oral argument. (*Id.*).

We must, therefore, determine the appealability of the order that appellants wish to appeal from because "[t]he appealability of an order goes directly to the jurisdiction of the [c]ourt asked to review the order." *N.A.M. v. M.P.W.*, 168 A.3d 256, 260 (Pa.Super. 2017) (citation omitted). With respect to appealability,

> [t]his Court may address the merits of an appeal taken from "(a) a final order or an order certified as a final order; (2) an interlocutory order [appealable] as of right; (3) an interlocutory order [appealable] by permission; or (4) a collateral order." *Commerce Bank v. Kessler*, 2012 PA Super 100, 46 A.3d 724, 728 (Pa. Super. 2012), quoting *Stahl v. Redcay*,

---

[1] The trial court further noted that "[e]ven if the present appeal were considered to be proper, the [trial] court believes that its [o]rder of August 14, 2017, adequately explains the basis for the court's decision." (Trial court opinion, 10/4/17 at 2.)

> 2006 PA Super 55, 897 A.2d 478, 485 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 341(b). "As a general rule, only final orders are appealable, and final orders are defined as orders disposing of all claims and all parties." ***Am. Indep. Ins. Co. v. E.S.***, 2002 PA Super 289, 809 A.2d 388, 391 (Pa. Super. 2002); *see also* Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a government unit or trial court.").

***Havalind v. Kline & Specter, P.C.***, 182 A.3d 488, 492 (Pa.Super. 2018).

Preliminarily, we note that "[t]he law is clear that an order that has the effect of directing the parties to arbitrate a matter is interlocutory and not appealable." ***Niemiec v. Allstate Ins. Co.***, 721 A.2d 807, 808 (Pa.Super. 1998) (citation omitted). Therefore, the interlocutory order compelling arbitration from which appellants seek to appeal is not appealable as a final order. Additionally, an interlocutory order compelling arbitration is not appealable as of right pursuant to Pennsylvania Rule of Appellate Procedure 311. Pa.R.A.P. 311 (enumerating those interlocutory orders from which an appeal may be taken as of right). Further, the order is not appealable as an interlocutory order by permission under Pa.R.A.P. 312 because appellants never petitioned the trial court for permission to appeal the interlocutory order as required under Pa.R.A.P. 1311 and the trial court never granted permission.

Here, appellants maintain that this court has jurisdiction over this appeal pursuant to the collateral order doctrine set forth in Pa.R.A.P. 313. Rule 313 defines a collateral order as "an order separable from and collateral to the

main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

> [T]he collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Price v. Simakas Co.*, 133 A.3d 751, 755 (Pa.Super. 2016) (internal citations and quotation marks omitted).

"With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it is entirely distinct from the underlying issue in the case." *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) (citation and internal quotation marks omitted). Here, the issue of whether the trial court erred when it entered its order compelling arbitration is separate and distinct from the allegations of misrepresentation, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, breach of express warranty, breach of implied warranty, negligence, negligent supervision, and civil conspiracy that appellants set forth in their complaint. Therefore, appellants satisfy the first prong of the collateral order doctrine.

With respect to the second prong of the collateral order doctrine, which is the importance prong, "a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. Further, the rights involved must implicate interests deeply rooted in public policy and going beyond the particular litigation at hand." *Id.* at 858-859 (citations, brackets, and internal quotation marks omitted).

Here, appellants claim that the order compelling arbitration "implicates important rights that are too important to be denied immediate review." (Appellant's brief at 4.) Specifically, appellants claim that the order violates their due process right to be heard by the tribunal that has jurisdiction over the matter, which, appellants assert, is the trial court. (*Id.*) Appellants further contend that "the rights at stake are not limited to appellants[, as appellants] are one family out of *many* against whom Toll Brothers has attempted to subject to the contradictory provisions in the [a]greement of [s]ale and [l]imited [w]arranty." (*Id.* (emphasis in original).) In so arguing, appellants rely on *Commonwealth v. Philip Morris, Inc.*, 128 A.3d 334 (Pa.Commw. Ct. 2015).

In that tobacco litigation case, 52 states and territories, including the Commonwealth of Pennsylvania ("Commonwealth"), entered into a master settlement agreement ("MSA") with certain tobacco manufacturers to settle tobacco-related health-care costs. *Id.* at 338-339. The MSA provided that

"[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor . . . shall be submitted to binding arbitration." *Id.* at 339. A calculation dispute arose as to whether certain states qualified for payment adjustments for the years 1999 to 2002, but was settled. The same calculation dispute then arose for the year 2003. In that dispute, tobacco manufacturers and most states, including the Commonwealth, agreed to multi-state arbitration. The dispute once again arose for the 2004 calendar year. *Id.* at 340. The Commonwealth filed a motion to compel single-state arbitration, and the tobacco manufacturers filed a motion to compel multi-state arbitration. The trial court granted the manufacturers' motion to compel multi-state arbitration.

The Commonwealth appealed claiming that the order compelling multi-state arbitration was appealable as a collateral order. *Id.* With respect to the second prong of the collateral order doctrine, the Commonwealth contended that the order raised important issues with respect to its sovereign rights in that it would not be permitted to select an independent arbitrator that would apply Pennsylvania law but would be compelled to jointly decide the appointment of the arbitrator with all of the states and territories subject to multi-state arbitration and that the arbitrator would apply generic legal principles. *Id.* at 341. The Commonwealth Court agreed finding that the Commonwealth satisfied the second prong of the collateral order doctrine because "[t]he issue is important not only to the parties of the MSA, but to

the public at large because the sovereign power in our government belongs to the people." *Id.* at 346.

Here, in their "brief in support of jurisdiction over this appeal," appellants contend that they satisfy the second prong of the collateral order doctrine because:

> the August 14 [o]rder implicates important due process interests that cannot go unprotected. At stake is whether [appellants] are required to arbitrate their construction defect claims in an arbitration forum that [appellants] did not agree to, or whether [appellants] are entitled to proceed in the Court of Common Pleas, which has jurisdiction over this matter. As set forth in [**Philip Morris**], the right to have claims heard by the tribunal with jurisdiction is a *per se* due process right, and due process rights are generally "too important to be denied review." [**Philip Morris**, 128 A.3d] at 344. Accordingly, on this basis alone, the second prong of the collateral order doctrine is met.

Appellant's brief in support of jurisdiction over this appeal, 11/2/17 at 19.

In their brief, appellants reiterate that position, but fail to explain how their voluntary and mutual agreement to arbitrate their disputes with Toll Brothers denies them due process and implicates interests deeply rooted in public policy that go beyond the litigation they initiated against Toll Brothers. This is not a case where the trial court ordered arbitration absent an agreement to arbitrate or in the absence of a rule of law requiring arbitration. *See Gilyard v. Redevelopment Auth. of Philadelphia.*, 780 A.2d 793 (Pa.Commw.Ct. 2001) (reversing order remanding appeal to arbitration where trial court had no legal basis to transfer matter to a panel of

arbitrators for a hearing). Additionally, this case is not analogous to *Philip Morris* wherein the order to compel multi-state arbitration, as opposed to single-state arbitration, implicated the Commonwealth's sovereign rights that ultimately belong to the citizens of the Commonwealth. *Philip Morris*, 128 A.3d at 346. In this case, appellants entered into an agreement of sale for the construction of a home that included a limited warranty. Both the agreement of sale and the ancillary limited warranty contained arbitration provisions that appellants do not wish to abide by. Therefore, the issue here does not concern a right that implicates interests deeply rooted in public policy that go beyond appellants' litigation against Toll Brothers. The issue here concerns appellants' unhappiness with the arbitration provisions in their contractual agreements with Toll Brothers. Additionally, the only deeply rooted public policy involved in this case is the well-established public policy that Pennsylvania favors arbitration because it relieves parties of expensive litigation and eases court congestion. *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 52 (Pa.Super. 2017).

In an attempt to demonstrate that the right involved goes beyond the particular litigation at hand, appellants claim that they are "one family out of *many* against whom Toll Brothers has attempted to subject to the contradictory arbitration provisions in the [a]greement of [s]ale and [l]imited [w]arranty." (Appellant's brief at 4 (emphasis in original).) This contention is equally unavailing and fails to implicate interests deeply rooted in public

policy because it merely raises the possibility that other individuals who may have voluntarily entered into home-construction contracts with Toll Brothers that contain arbitration provisions may not want to abide by those arbitration provisions in the event that a dispute arises. Clearly, appellants fail to satisfy the second prong of the collateral order doctrine.

Finally, even if we determined that appellants satisfied the second prong, appellants concede that their claim will not be irreparably lost if appellate review is postponed until after arbitration, as follows:

> If the August [o]rder is not immediately appealable, in the best case scenario, [a]ppellants – who are senior citizens – will be forced to expend substantial amounts of money and time over the course of years before obtaining appellate review of the August [o]rder, only to start the litigation from beginning in the Chester County Court of Common Pleas.

Appellant's brief at 7. Therefore, even assuming that appellants satisfied the second prong of the collateral order doctrine, by their own admission, appellants would not satisfy the third prong.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/18

- 13 -